Michael S. JAMES, Plaintiff-Appellant,

v.

David A. HEINTZ, Butterfield Trucking Company and
Aetna Casualty & Surety Company, Defendants-
Respondents,†

MILWAUKEE COUNTY MEDICAL COMPLEX and
Construction Worker's Health Fund, Defendants.

Court of Appeals

*No. 91–0829. Submitted on briefs October 1, 1991.—Decided
November 12, 1991.*

(Also reported in 478 N.W.2d 31.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James M. Ryan* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Joseph Berger* of the *Law Offices of John J. Spindler* of Brookfield.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Michael S. James brought this action to recover damages he claims he suffered as a result of an accident between an automobile he was driving and a truck owned by Butterfield Trucking Company and driven by David A. Heintz. The trial court directed a verdict against James at the end of his case-in-chief, and entered judgment dismissing James' complaint.[1] We reverse.

## I.

It was dark when, at 6 p.m. on November 25, 1986, James was driving in the left southbound lane of Highway 164, and hit the rear of the Butterfield truck. Highway 164 is a four-lane roadway in Waukesha County, and the truck was stopped on the highway waiting to make a left turn. There were no street lights in the area. James told the jury that he saw neither the truck nor any lights on the truck, and had not attempted to stop prior to the collision.

At the time of the accident, Heintz was hauling a sticky black mixture of tar and gravel from a plant on the west side of Highway 164 to a plant on the east side

---

[1] Technically, a "directed verdict" is appropriate only at the close of all the evidence. *See* Rule 805.14(4), Stats. The proper motion at the end of the plaintiff's case-in-chief is a motion for "dismissal." Rule 805.14(3), Stats.

of the highway approximately one block down the road. A Butterfield employee testified that approximately once every four loads drivers would spray oil on the trucks' load boxes to keep the mixture from sticking. He reluctantly admitted that the oil and asphalt together with road dust might get on the truck's tail lights and make them less visible than they would be if they were clean.[2] He also testified that the truck was equipped with a strobe that would emit bursts of intense light every second or two when activated. As part of his proof, James attempted to show that the truck did not have the lighting required by federal law. The trial court, however, excluded the evidence.

## II.

A trial court may dismiss after the plaintiff has rested his or her case-in-chief if the evidence is insufficient to support a verdict in the plaintiff's favor. Rule 805.14(3), Stats.[3] Dismissal, however, is not permitted unless the trial court "is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the [plaintiff], there is no credible evidence to sustain a finding" in the plaintiff's favor. Rule 805.14(1), Stats. *See also Helmbrecht v. St.*

---

[2] "Not so dirty that you couldn't see. I mean, I'll admit they might be dimmer, but not that you couldn't see, no. Especially a brake light. It's pretty bright."

[3] Rule 805.14(3), Stats., provides:

**Motion at close of plaintiff's evidence.** At the close of plaintiff's evidence in trials to the jury, any defendant may move for dismissal on the ground of insufficiency of evidence. If the court determines that the defendant is entitled to dismissal, the court shall state with particularity on the record or in its order of dismissal the grounds upon which the dismissal was granted and shall render judgment against the plaintiff.

*Paul Ins. Co.,* 122 Wis. 2d 94, 109–110, 362 N.W.2d 118, 127 (1985). Although we apply the same standard on appeal, we must also give substantial deference to the trial court's better ability to assess the evidence. *Ibid.* Thus, we should not overturn a trial court's decision to dismiss at the end of the plaintiff's case " 'merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision.' " *Olfe v. Gordon,* 93 Wis. 2d 173, 186, 286 N.W.2d 573, 579 (1980) (citations omitted). Rather, we may set aside a dismissal only if the record reveals that the trial court was "clearly wrong." *Ibid.*

The trial court was "clearly wrong" when it dismissed James' case. A reasonable jury could have believed James' testimony that he was driving the speed limit and did not see anything in the roadway until he hit the truck. It could have also found that James did not see the truck because the strobe light was not being used and because the truck's rear lights were obscured by a mixture of road dirt, tar, gravel, and oil. The jury could have thus concluded that Butterfield Trucking was negligent. The trial court's judgment dismissing James' claims is reversed, and the matter is remanded for trial.[4]

## III.

Under ordinary circumstances, our reversal and remand for trial would end our discussion of this case. As James points out in his brief, however, the trial court made a series of erroneous and prejudicial evidentiary

[4]Remand for a new trial might not have been necessary if the trial court had reserved its decision on the defendants' motion. *See Samson v. Riesing,* 62 Wis. 2d 698, 704–705, 215 N.W.2d 662, 665–666 (1974).

rulings. Judicial economy requires that they be addressed. *See State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal).

### A. *Exclusion of Evidence Concerning the Lights Required by Federal Law.*

James attempted to prove through the testimony of George H. Mohr that the lights on the back of the truck violated applicable federal regulations. Mohr testified that he had owned a truck repair business for more than thirty-two years, and that since 1959 his business had encompassed lighting and safety equipment. He told the jury that he was familiar with truck-lighting requirements imposed by certain federal regulations, and that the regulations applied to the Butterfield truck. Mohr was prepared to testify that the truck's lighting did not conform to those regulations. The trial court ruled that James had laid an improper foundation for this opinion and excluded it.

Opinion evidence is admissible if it can help the jury decide a contested issue of fact. Rule 907.02, Stats.; *State v. Hollingsworth,* 160 Wis. 2d 883, 896, 467 N.W.2d 555, 560 (Ct. App. 1991).[5] "A trial court's decision to admit or exclude expert testimony is a discretionary determination that is made pursuant to Rule 901.04(1), Stats." *State v. Blair,* 164 Wis. 2d 64, 74, 473 N.W.2d 566, 571

---

[5]Rule 907.02, Stats. provides:

**Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(Ct. App. 1991).[6] The determination, however, must have "a reasonable basis" and be made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted).

A witness called to give expert testimony may, like any other witness, establish a proper testimonial foundation by his or her own testimony. *Cf.* Rule 906.02, Stats. (A witness' requisite personal knowledge may be proven by his or her own testimony.). This testimony must be accepted by the trial court in making its determination under Rule 901.04(1), Stats., unless it finds the testimony not credible or there is contrary credible evidence that undercuts the proffered foundation. Here, the trial court apparently accepted Mohr's testimony that he was familiar with federal lighting requirements for trucks and that those requirements applied to the Butterfield truck. Additionally, this testimony was not rebutted by any other evidence. Under these circumstances, the undisputed evidence established that Mohr was qualified by experience to opine whether the federal regulations applied to the truck and, if so, whether the truck was in compliance.[7] *See Hollingsworth,* 160 Wis. 2d at 896, 467 N.W.2d at 560. The trial court abused its discretion in excluding his testimony.

---

[6]Rule 901.04(1), Stats., provides, as pertinent to this appeal, that "[p]reliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the judge."

[7]Generally, violation of a safety regulation is negligence. *See Nordeen v. Hammerlund,* 132 Wis. 2d 164, 166–169, 389 N.W.2d 828, 829–830 (Ct. App. 1986); Restatement (Second) of Torts §§ 285(a) & (b), 286 (1964).

## B. *Use of Exhibits During Counsel's Opening Statement.*

Even though defense counsel had no objection, the trial court prevented James' attorney from showing pictures of the truck to the jury during his opening statement because the pictures had not been previously marked as exhibits.[8]

A trial court has substantial discretion in conduct of the trial and in the presentation of evidence. Rule 906.11(1), Stats. This discretion applies to the lawyers' use of demonstrative evidence.

> It is well settled that, within the discretion of the trial judge, diagrams, charts and graphs can properly be used in opening statement. The rule extends both (1) to exhibits that counsel intends later to introduce and (2) to those that will not be used subsequently in the trial but are either extemporized (as a blackboard) or prepared in advance of trial to summarize a claim.

G. Joseph, Modern Visual Evidence, § 9.02[3][a] at 9–13 to 9–14 (1991) (footnotes omitted). The exercise of discretion, however, "is not the equivalent of unfettered decision-making." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). Rather, "a discretionary determination must be the product of a rational mental

---

[8]The trial court's action appears to have been based on personal pique:

> You don't just waltz in here and do what you want to do. This is opening statement, and under the rules you're not supposed to be using exhibits unless there's some agreement or the Court allows it. And that means you ask.

When James' lawyer asked for permission to use the pictures, the trial court refused because they had not been marked as exhibits.

process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Ibid.* Although anything shown to the jury should be properly identified for the appellate record, the photographs could have been marked at any time. The trial court's refusal to permit James' attorney to use the pictures during his opening statement was not an appropriate exercise of its discretion.

## C. *Sequestration of Witness.*

James' counsel sought to have two Butterfield employees sequestered during the other's testimony. The trial court denied the request without giving a reason other than the lawyer had made his initial request in front of the jury.[9]

---

[9]The following is the extent of the colloquy before the jury when James' attorney first asked that the witnesses be sequestered:

> [JAMES' COUNSEL]: Your Honor, I'd like to call Mr. Scheel to the stand, and I'd ask that Mr. McGrath, who is in the back of the courtroom right now, sit outside—

> THE COURT: Okay.

> [JAMES' COUNSEL]: —during his testimony.

> THE COURT: That request is denied. We'll have Mr. Scheel testify.

> Have a seat sir.

Later, James' attorney renewed his request outside the presence of the jury:

> [JAMES' COUNSEL]: Your Honor, before we bring the jury in I'd move under 906.15 for the exclusion of Mr. McGrath, who is not a party to this case, and to exclude him from listening to the testimony of Mr. Scheel, and I'd also exclude Mr. Scheel, when I call Mr. McGrath, to have Mr. Scheel under the same section to not be present at trial at the same time.

██

Rule 906.15, Stats., provides:

**Exclusion of witnesses.** At the request of a party the judge or court commissioner shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and he may make the order of his own motion. This section does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employe of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause. The judge or court commissioner may direct that all such excluded and non-excluded witnesses be kept separate until called and may prevent them from communicating with one another until they have been examined or the hearing is ended.

As Judge Jack B. Weinstein and Professor Margaret A. Berger relate:

The exclusion, separation or sequestration of witnesses—a practice also referred to as putting the witness "under the rule"—is at least as old as the Bible. The Story of Susanna and the Elders was relied upon almost from the beginning of recorded trials as justifying the practice of separating witnesses in order to expose inconsistencies in their testimony. The rule of exclusion also aims "to prevent

THE COURT: You made a similar request earlier in front of the jury after we had already discussed the witnesses and the order of their testimony extensively on the record, and I think that you've waived your right under that. It's not appropriate in front of the jury to try to determine what witnesses are in the court, what witnesses are not in the court, who will be testifying, how do I instruct the witnesses, and I think that that's waived. I gave plenty of opportunity to make that request earlier, and I'm not going to grant it now. I deem it waived. We're ready for the jury.

the possibility of one witness shaping his testimony to match that given by other witnesses at the trial." Such shaping may be an unconscious reaction to suggestion rather than a deliberate attempt at collusion. The rule thus has a two-fold goal: to prevent falsification and to uncover fabrication that has already taken place.

3 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 615[01] at 615-5 (1991) (footnotes omitted). Rule 906.15's command is mandatory subject to its terms. *Id.,* ¶ 615[02] at 615-9 ("A court may not deny the request unless the witness fits into one of three exempted categories.") (footnote omitted). Since none of the exceptions to compulsory sequestration were present here, the trial court erred in not granting the request.[10]

D. *Impeachment by Use of Extrinsic Evidence.*

Prior to trial, James was served with interrogatories, one of which asked whether his driver's license had ever been suspended. James answered "no." During his cross-examination of James, defense counsel read the interrogatory question and answer into the record, and was then, over the strenuous objection by James' lawyer, permitted to impeach James' credibility with a certified copy of the suspension that resulted from the November 25, 1986, accident.[11] This was error. Rule 906.08(2),

---

[10]Although a trial court may appropriately prevent a lawyer from posturing in front of the jury, our review of the transcript persuades us that James' attorney did nothing wrong in requesting sequestration of the witnesses while the jury was present. In any event, a trial court must comply with the clear terms of Rule 906.15, Stats.

[11]The trial court instructed the jury that the evidence was being received solely to impeach James' credibility as a witness:

Stats., explicitly prevents the use of extrinsic evidence to impeach a witness' credibility, even where the witness has opened the door by his or her own assertions. *See State v. Sonnenberg,* 117 Wis. 2d 159, 173-175, 344 N.W.2d 95, 102-103 (1984).[12]

*By the Court.*—Judgment reversed and cause remanded.

> For the jury, the Court is instructing you as follows—that evidence concerning the plaintiff's—that the plaintiff's driver's license was suspended was introduced as relevant to the issue of plaintiff's credibility, but the jury is to disregard any testimony concerning the nature of the offense for which the license was suspended as that information is not relevant to the issues in this case.

In Wisconsin, a conviction for a traffic offense, other than on a guilty plea, is not admissible in a subsequent civil action. *Compare Anderson v. Saunders,* 16 Wis. 2d 55, 59, 113 N.W.2d 831, 833 (1962) *with Gaspord v. Hecht,* 13 Wis. 2d 83, 87-88, 108 N.W.2d 137, 139 (1961) (guilty plea).

[12]Rule 906.08(2), Stats., provides:

**Specific instances of conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crimes as provided in s. 906.09, may not be proved by extrinsic evidence. They may, however, subject to s. 972.11 (2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.