Dean P. WESTER, Plaintiff-Respondent-Appellant-Cross Respondent,

v.

Dawn C. BRUGGINK, Defendant-Respondent-Cross Appellant,

Wayne L. BRUGGINK and American Family Mutual Insurance Company, Defendants-Respondents,

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 93–0601. Submitted on briefs November 11, 1994.—Decided December 21, 1994.*

(Also reported in 527 N.W.2d 373.)

309

310

311

On behalf of the plaintiff-respondent-appellant-cross respondent, Dean P. Wester, and defendant-appellant, Heritage Mutual Insurance Company, the cause was submitted on the briefs of *Richard Hahn* of *Holden & Hahn* of Sheboygan.

On behalf of the defendant-respondent-cross appellant, Dawn C. Bruggink, the cause was submitted on the briefs of *James O. Conway* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

On behalf of the defendants-respondents, Dawn C. Bruggink and American Family Mutual Insurance Company, the cause was submitted on the brief of *David R. Hull* of Appleton.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. In this automobile accident case, the primary issue regarding liability was which party, Dawn C. Bruggink or Dean P. Wester, crossed the center line causing a head-on collision. The investigating police officer gave his opinion that the point of impact was in the Bruggink lane. The main issue on appeal is whether the officer's opinion testimony about point of impact was properly admitted either as lay or expert opinion testimony. We hold that the officer's testimony was not proper lay opinion because it was not based on perception. However, we also hold that the officer was qualified to give expert opinion about the point of impact and therefore affirm the trial court on that basis.

Wester raises two other issues: (1) whether the trial court misused its discretion when it refused to

admit the manual used in an accident investigation course taken by the investigating officer for impeachment purposes and (2) whether the trial court misused its discretion when it refused to give a special instruction submitted by Wester. We hold that the trial court did not misuse its discretion on either ruling and affirm.

Bruggink cross-appeals from the nonfinal order relating to the remittitur of damages. The jury found Wester 100% negligent and established Bruggink's damages as $75,000. On motions after verdict, the trial court found that the damages were excessive and granted Wester's motion for a new trial unless Bruggink remitted reduced damages of $20,000. We hold that the trial court did not misuse its discretion and affirm its order.

The following facts are relevant to the first issue—whether the trial court properly admitted the police officer's opinion testimony. Prior to the accident, Wester was driving in the westbound lane on a county trunk highway while Bruggink was travelling towards him in the eastbound lane. At trial, both parties' accident reconstruction experts testified that the accident occurred when the left front of the Bruggink vehicle contacted the left front of the Wester vehicle. Wester's expert gave the opinion that the vehicles collided in the westbound lane or Wester's lane. The basis of his opinion was that there was a gouge mark in Wester's lane showing where "the Wester vehicle hit the roadway and made an actual displacement in the asphalt surface."[1] Wester's expert further based his opinion on an

---

[1] Wester's expert's assessment of the point of impact was based on information he gathered from the scene of the accident as well as discussions with an officer who had assisted in the investigation of the accident.

assessment of the resting positions of the vehicles after they collided. He also concluded that there were no gouge marks or skid marks in Bruggink's lane.

Bruggink's expert gave the opinion that the vehicles' point of impact was in the Bruggink lane. The expert based his conclusions in part on descriptions of the physical evidence provided in the investigating officer's accident report and supplemental report.[2] The expert testified that the description was that "there were a pair of skid marks in the eastbound lane produced by [Bruggink's vehicle], that the skid marks were roughly twenty feet long and then had a sharp bend or kink to them, and that, at that point where the bend or kink to the skid marks was located . . . an area of maximum engagement." The engagement point was characterized by gouge marks.

Regarding the relative importance of different types of physical evidence found at accident scenes, Bruggink's expert testified that gouge and skid marks were the two most important pieces of physical evidence for accident reconstruction purposes. He further testified:

> The gouge and scrape marks are produced by the damaged portions of the vehicles, the metallic, rigid metallic portions of the vehicles that are bent or crushed and then . . . gouge a portion of the asphalt or scrape on the asphalt with that rigid metallic component. So that we know the first place it is possible to see scrape and gouge marks is at the engagement or impact area.

---

[2] Bruggink's expert did not go to the accident scene, but relied instead on transcripts of deposition testimony, the officer's accident reports and Wester's expert's work product and notes.

> The officer's observation that he saw such
> marks at the location of the skid marks where the
> skid marks took a bend indicates . . . that that's the
> point of engagement, that's the beginning of the
> scrape and gouge marks . . ..

Bruggink also called the investigating officer to testify about the point of impact. The officer testified that he had fifteen years of experience as a sheriff's deputy in the patrol division, that he had a degree in math and physics and that he had training for on-scene traffic investigation at the Northwestern University Traffic Institute and for technical and advanced accident investigation at the State Patrol Academy. He stated that his training included "how to look for points of maximum engagement on the highway which would indicate where the accident had happened." The officer testified that when investigating an accident that happens approximately head on or at somewhat of an angle, the location of gouge marks is the best indicator of the point of impact.

During direct examination of the officer, Bruggink's counsel asked him "to a reasonable degree of scientific probability, based upon your training, your experience, and your observation of the twenty feet of parallel skid marks in the eastbound lane, . . . your observation of the gouge mark with the scrubbing . . ., your observation of the debris, . . . do you have an opinion . . . as to which side of the highway the accident occurred?" Wester's counsel objected on the basis that the officer was neither qualified as an expert to give an opinion about point of impact nor was his opinion admissible as lay witness testimony. The trial court refrained from deciding whether the officer was qualified as an expert but ruled that given the officer's "training and experience, the number of accidents that

he's investigated, his previous opportunities to testify, and his observations with respect to the incident in question, that he is competent and is able to offer opinions based upon a rational perception of what he believed happened at the point of impact." The officer then gave his opinion that the point of impact was in Bruggink's lane.

■■■■

Admission of opinion evidence, *Pattermann v. Pattermann*, 173 Wis. 2d 143, 152, 496 N.W.2d 613, 616 (Ct. App. 1992), and whether a witness is qualified as an expert are discretionary decisions for the trial court, *Simpsen v. Madison Gen. Hosp. Ass'n*, 48 Wis. 2d 498, 509, 180 N.W.2d 586, 592 (1970). We will uphold the trial court's decision unless the discretion was not exercised or there was no reasonable basis for the trial court's decision. *See Wisconsin Public Serv. Corp. v. Krist*, 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981). To the extent that the trial court's admission of evidence is premised on an incorrect application of the law, a misuse of discretion occurred and our review is de novo. *State v. Sharp*, 180 Wis. 2d 640, 649-50, 511 N.W.2d 316, 320-21 (Ct. App. 1993). However, when the trial court's holding is correct, we may uphold on grounds other than those used by the trial court. *See id.* at 650, 511 N.W.2d at 321.

First, Wester argues that the assessment of point of impact is a scientific, expert opinion rather than a lay witness opinion rationally based on perceptions and, therefore, that the officer's opinion was not admissible as lay opinion testimony under § 907.01, STATS. Conversely, Bruggink contends that the officer's opinion was admissible as lay opinion testimony. In support of this position, she argues that this case is governed by *Vonch v. American Standard Ins. Co.*, 151 Wis. 2d 138,

150, 442 N.W.2d 598, 602 (Ct. App. 1989), where we held that a police officer's testimony about his personal observations of the scene of the accident, the location of debris and the type and nature of the damage of the vehicles was proper lay opinion.

We disagree with Bruggink that this case falls under *Vonch* and conclude that under *City of Milwaukee v. Bub*, 18 Wis. 2d 216, 118 N.W.2d 123 (1962), the officer's testimony was not proper lay opinion testimony. Here, Wester does not contest the admissibility of the officer's testimony about his personal observations about the scene of the accident as in *Vonch*. Rather, Wester challenges the admissibility of the conclusions the officer made from these observations. We agree with Wester that, under the facts of this case, the officer's conclusions about the point of impact were not based on perception and were not admissible as *lay* testimony. As our supreme court acknowledged in *Bub*, 18 Wis. 2d at 224, 118 N.W.2d at 127, "It takes a high degree of training, plus experience, to become an expert on the complex problem of where an impact occurs in an automobile accident." One commentator has stated that traffic accident reconstruction requires:

> a solid understanding of mathematics, physics, mechanics, and the other scientific principles involved, a keen eye for recognizing important but sometimes nearly obscure evidence, judgment in assessing the significance of the available and often times conflicting evidence, and patience to continue to ferret out all of the facts surrounding accidents so that the pieces of the puzzle are fit together to produce reasonable and sound conclusions.

Paul R. Wolf, *The Process of Traffic Accident Reconstruction, in* ACCIDENT RECONSTRUCTION 9, 22 (State Bar of Wis. 1977).

■

Here, as in *Bub*, we conclude that it takes an understanding of technical and scientific accident reconstruction principles to assess the point of impact from gouge and skid marks and debris at the accident scene. Thus, we do not agree with the trial court to the extent that it determined that the officer's point of impact testimony was admissible as lay opinion. However, because we can uphold the trial court on grounds it did not use, *see Sharp*, 180 Wis. 2d at 650, 511 N.W.2d at 321, we address Wester's next argument that the officer was not qualified as an expert to give opinion testimony about point of impact.

■

Our supreme court held in *Bub* that police experience alone does not qualify an officer as an expert to testify about the point of impact in an automobile accident. *Bub*, 18 Wis. 2d at 224-25, 118 N.W.2d at 128. However, we agree with Bruggink that *Bub* does not stand for the proposition that a police officer is never qualified to give an opinion as to point of impact. Instead, whether a witness qualifies to testify as an expert depends on the witness's background, education and experience rather than a particular label. *Leahy v. Kenosha Memorial Hosp.*, 118 Wis. 2d 441, 453, 348 N.W.2d 607, 614 (Ct. App. 1984); § 907.02, STATS. In determining whether a person is qualified to testify about the point of impact, the trial court should compare the technical and scientific expertise of the prospective witness with the complexity of the case. *Cf. State v. LaBrutto*, 553 A.2d 335, 341 (N.J. 1989) ("We acknowledge that there may be some cases in which determining the point of impact of a collision will involve such complicated technical and scientific evi-

319

dence that only a qualified reconstruction expert could rationally form an opinion about the point of impact.").

■

Here, the record supports a conclusion that the officer was qualified by knowledge, training and education to testify as an expert about the point of impact. *See* § 907.02, STATS. The officer's education and training include a degree in math and physics and courses in accident investigation. Moreover, our conclusion that the officer had the type of knowledge sufficient to make this assessment is further supported by a comparison of the testimony of the officer and of both experts in this case. Both experts testified that the location of gouge marks is an important indicator of point of impact.[3] Bruggink's expert testified that skid marks leading to gouge marks is an indication of point of impact. The officer similarly testified to the importance of gouge marks and that he relied on his knowledge about gouge and skid marks to make his assessment, as did both experts. Thus, we hold that the foregoing facts of record support the admissibility of the officer's expert opinion testimony.

---

[3] Both experts were also in agreement that this accident was a head-on corner hit. We note that, according to the literature, "[w]hen two vehicles sustain a head-on hit or a corner hit, [gouge marks] are often found and are easily assessed to determine the point of impact. When, however, the impact is one of a glancing and continuing action by both vehicles, it is a great deal more difficult to assess that information seen in and on the roadway." *See* William G. Burrill, *Vehicular Accident Reconstruction, in* LITIGATING THE COMPLEX MOTOR VEHICLE CASE: ACCIDENT RECONSTRUCTION AND THE SEAT BELT DEFENSE, at 163, 166 (PLI Litig. & Admin. Practice Course Handbook Series No. 323, 1987).

Next, we address the second issue in this appeal. At trial, Wester sought to admit a traffic accident investigation manual for the purpose of impeaching the investigating officer's testimony—to show that the officer did not conduct his investigation in accordance with his education and training. The trial court ruled that the manual was not admissible because it was hearsay and because the manual was cumulative to the officer's own testimony.

We hold that, although arguably the manual was not offered for the truth of the matter asserted and therefore was not hearsay, *see* § 908.01(3), STATS., the manual would have been cumulative to the officer's testimony. Therefore, we hold that the trial court did not misuse its discretion by excluding the manual. *See State v. Echols*, 175 Wis. 2d 653, 677, 499 N.W.2d 631, 638, *cert. denied*, 114 S. Ct. 246 (1993). The officer testified that this manual was part of his instruction, and he admitted that he did not follow all of the procedures prescribed by the textbook.[4] The officer admitted that he did not take or record measurements or take photographs at the scene as the manual recommends for more serious accidents. The admission of the manual would merely have been cumulative to the officer's foregoing testimony. Wester does not point to any part of the manual which would not have been cumulative to the officer's trial testimony.

Now we address the third issue—whether the trial court erred when it refused to give the jury instruction requested by Wester which would inform the jury that the center of the highway is not the solid yellow no-passing line painted on the roadway, "but rather is

---

[4] He also testified that police department policy did not require these procedures under the facts of this case.

located on the right-hand side of and adjacent to the center line of the roadway." Wester contends that because the primary liability issue was who crossed the center line and because the evidence brought into question the location of the center of the highway, the trial court erred by refusing to give the requested special instruction.

It is error for a trial court to refuse to give a jury instruction on an issue raised by the evidence. *See Rosche v. Wayne Feed Div., Continental Grain Co.*, 152 Wis. 2d 78, 82, 447 N.W.2d 94, 95 (Ct. App. 1989). However, the instructions must, as a whole, communicate a correct statement of the law and may not be constructed in such a way as will probably mislead the jury as to the law. *Id.* The trial court has broad discretion in instructing the jury. *McKnight v. General Motors Corp.*, 143 Wis. 2d 67, 69, 420 N.W.2d 370, 371 (Ct. App. 1987). We hold that the trial court did not err because the requested instruction had the potential for confusing the jury and because the instructions given accurately stated the law.

The evidence was that there was a solid yellow no-passing line on the north lane, Wester's lane, and a dashed yellow line about eight inches to the south of the solid yellow line. Bruggink testified that when she first saw the Wester vehicle, it was coming in her direction with its left wheels on the solid yellow no-passing line, which she considered the center of the highway. She further testified that upon impact the Wester vehicle was about a foot over the solid yellow no-passing line and "at least some distance south of the dashed line."

Wester's expert testified that the true center line of the road was close to the inside edge of the dashed

yellow line which was to the south of the solid yellow line. He further testified that there were eight inches between the two lines.

The trial court concluded that the pattern jury instruction WIS J I—CIVIL 1135 clearly stated the law and that Wester's requested instruction would confuse the jury. WISCONSIN J I—CIVIL 1135 states that the law requires "that operators of vehicles proceeding in opposite directions shall pass each other to the right, and . . . each operator shall give to the other at least one-half of the main traveled portion of the roadway as nearly as possible."

We agree with the trial court: which line more closely marks the center of the road is not material to this case because the testimony was that Wester crossed over both lines into Bruggink's lane. As Bruggink argues, the testimony was not that the accident happened on the center line. The issue for liability was *which* vehicle crossed the center line, not *whether* a vehicle crossed the center line. Thus, we agree that Wester's requested instruction had the potential for confusing the jury regarding the law and the evidence of the case. Moreover, Wester had ample opportunity through his expert's testimony to establish the location of the center of the road; therefore, the failure to give the requested instruction did not leave the jury inadequately informed of the law and the evidence.

Finally, we address the issue raised in the cross-appeal—whether the trial court erred when it granted Wester's motion for remittitur of damages. The following evidence, resolving any conflicts to Bruggink's favor, is relevant to this issue.

Bruggink injured both of her knees in the accident. She was seventeen years old and had just completed

323

her junior year in high school. Prior to the accident, she participated in track, softball and cross country and was a cheerleader. Also prior to the accident, she had problems with her left knee which caused her pain when she ran long distances.

Immediately after the accident, Bruggink had pain in both of her knees, which gradually became worse. She continued to participate in cheerleading, but could not participate in cross country and track. She experienced pain when she climbed stairs, when she sat in one position and after dancing.

The medical expert testimony was that Bruggink sustained permanent injury as a result of the accident and that her preexisting pain in her left knee would have been likely to persist regardless of the accident. Eventually, she had surgery on her left knee and planned to have surgery on her right knee. The evidence was that the surgery was beneficial but would not completely alleviate the pain in either knee.

The jury returned a unanimous verdict that $75,000 was reasonable to compensate Bruggink for her past and future pain, suffering and disability. On motions after verdict, the trial court ruled pursuant to its authority under § 805.15(6), STATS., that the award was excessive and determined that $20,000 was a reasonable amount. The trial court gave the following reasons for its decision based on the testimony of the treating physicians and of Bruggink and on an independent medical examination:

> I recognize that Dawn . . . because of the injuries that she sustained, . . . was not able to participate in many of the activities that she otherwise would have expected to participate in, and I also recognize this was a significant part of her life, perhaps the only opportunity for her at that stage to have these

further experiences, and that will be forever lost to her.

I also note that she did have a prior condition I believe with respect to the left knee . . . and as a result of the aggravation, she was required to have surgery. That surgery has been apparently successful in reducing a significant amount of discomfort that she experienced. She anticipates having surgery with respect to the right knee, and it is anticipated that that surgery will have a significant affect [sic] on reducing the amount of discomfort that she has been experiencing with respect to the right knee. The court notes that with respect to some social activities . . . she has not sustained a great impairment in the quality of her life.

The court does find in view of the nature of her injuries, the limitations placed upon her, and the quality of life that she can anticipate experiencing for the anticipated duration of her life, the amount of seventy-five thousand dollars, although not perverse, is excessive.

The trial court gave Bruggink the option of remitting the reduced damages or having a new trial on damages only. Bruggink did not remit and cross-appealed the trial court's nonfinal order.

Section 805.15(6), STATS.,[5] codified the procedure adopted by our supreme court in *Powers v. Allstate Ins.*

---

[5] Section 805.15(6), STATS., provides:

(6) EXCESSIVE OR INADEQUATE VERDICTS. If a trial court determines that a verdict is excessive or inadequate, not due to perversity or prejudice or as a result of error during trial (other than an error as to damages), the court shall determine the amount which as a matter of law is reasonable, and shall order a new trial on the issue of damages, unless within 10 days the party to whom the option is offered elects to accept judgment in the changed amount. If the option is not accepted, the time period for petition-

*Co.*, 10 Wis. 2d 78, 91-92, 102 N.W.2d 393, 400 (1960), "[W]here an excessive verdict is not due to perversity or prejudice, and is not the result of error occurring during the course of trial, the plaintiff should be granted the option of remitting the excess over and above such sum as the court shall determine is the reasonable amount of plaintiff's damages, or of having a new trial on the issue of damages." *See Koele v. Radue*, 81 Wis. 2d 583, 588 n.6, 260 N.W.2d 766, 768 (1978). The *Powers* rule, as it applies to this case, allows the trial court to set aside a damage award which it determines "is too large to be supported by the evidence." *See Makowski v. Ehlenbach*, 11 Wis. 2d 38, 42, 103 N.W.2d 907, 910 (1960) (applying § 270.49(2), STATS., 1959, the former additur and remittitur statute). The trial court will declare the damages excessive where it is clear "that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved·...." *Id.* at 43, 103 N.W.2d at 911.

In determining whether the award is excessive, the trial court must view the evidence bearing on damages in the light most favorable to the plaintiff. *Olson v. Siordia*, 25 Wis. 2d 274, 284, 130 N.W.2d 827, 833 (1964). The trial court is not required to view pieces of evidence which in isolation might support the verdict, but it must view the evidence as a whole. *Id.* at 284-85, 130 N.W.2d at 833. Because the trial court has the advantage over the appellate court of the opportunity to view the testimony and the injured person, we will reverse the trial court's determination that the damages are excessive only if we find a misuse of discretion.

ing the court of appeals for leave to appeal the order for a new trial under ss. 808.03(2) and 809.50 commences on the last day of the option period.

*Makowski*, 11 Wis. 2d at 44, 103 N.W.2d at 911. We will not find a misuse of discretion if there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of the party seeking to avoid remittitur. *See Olson*, 25 Wis. 2d at 285, 130 N.W.2d at 833.

Here, we conclude that there was a reasonable basis for the trial court's determination. The trial court gave these reasons for its decision: that Bruggink had a preexisting injury which would have given her pain without the accident, that her quality of life was not substantially impaired and that the surgery was likely to give her significant relief from the injury. Under our deferential standard of review, we cannot conclude that these bases are unreasonable; the trial court with a view of Bruggink herself was in a better position to assess the extent to which Bruggink's injuries were proved under the evidence. *See Makowski*, 11 Wis. 2d at 44, 103 N.W.2d at 911. Therefore, we affirm the trial court on the cross-appeal.

*By the Court.*—Judgment and order affirmed.