Greg TANNER, Plaintiff-Appellant,

v.

Clifford S. SHOUPE, Richard J. Riniker, and Allstate Insurance Co., Defendants,

EXIDE CORPORATION, Defendant-Respondent.

Court of Appeals

*No. 97–1566. Submitted on briefs May 11, 1998.—Decided May 20, 1999.*

(Also reported in 596 N.W.2d 805.)

359

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Joseph A. Bradley* of *Eisenberg, Weigel, Carlson, Blau, Reitz & Clemens, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Roberta F. Howell* and *Mark A. Neuser* of *Foley & Lardner* of Madison.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J. This is a products liability case involving an automobile battery that exploded and injured Greg Tanner. Tanner appeals the order granting Exide Corporation's motion for a directed verdict after Tanner presented his case to the jury, and the resulting judgment. There are two issues: (1) did the trial court erroneously exercise its discretion in refusing to allow Tanner's expert witness to testify, and (2) did the trial court err in directing a verdict in favor of Exide on Tanner's claims for strict liability and negligence. We conclude the trial court erroneously exercised its discretion in excluding the testimony of Tanner's expert witness regarding the damage to the vent cap and the adequacy of the warnings. We also conclude that with this testimony there was sufficient evidence to create a jury question on whether the battery was defective due to the failure to warn against a foreseeable misuse. We therefore reverse.

## BACKGROUND

Tanner, who had some training and experience in working with batteries, agreed to help an acquaintance get his automobile started. He observed some corrosion on the negative terminal of the automobile's battery and proceeded to scrape it off with a penny. Tanner admitted he did not read the warnings on this particular battery and, although he was familiar with general safety warnings on batteries to wear eye protection, he did not have safety glasses available to him at the time

and did not wear any eye protection. At some point after Tanner reconnected the negative terminal, the battery exploded. Battery acid and shrapnel from the top of the battery injured his eyes and face.

Tanner's complaint alleged both negligence and strict liability. At trial he attempted to introduce evidence of the defective design of the battery, the cause of the explosion and the inadequacy of the warnings through his witness, Stanley Runyan, an experienced auto mechanic and consultant. However, the court ruled that Runyan was not qualified to testify as an expert in these areas. (We discuss the details of the testimony Runyan would have offered later in the opinion.)

Tanner called Exide's expert witness, Eugene Rutkoski, adversely.[1] Rutkoski is a consulting metallurgist who previously worked at a battery company doing laboratory testing of batteries and smelting (melting down junked batteries and converting them back into lead to make new batteries). Rutkoski examined the two vent caps and the piece of the battery cover retrieved from the exploded battery after the accident. Vent caps cover internal parts of the battery (cells) that contain potentially explosive materials. Rutkoski explained that the vent caps are designed to be removed and they can then be replaced by pushing each vent cap slowly into the cell to make a good seal. Rutkoski opined that someone had "hit [one of the vent caps] with great force trying to force it into the holes and it caught up on the sides and it has spread the vent barrels out."

---

[1] Because of the standard of review for a challenge to a directed verdict, we summarize Rutkoski's testimony in the light most favorable to Tanner.

Rutkoski further explained that the bent and deformed vent cap allowed an opening where a spark could enter the cell and cause an explosion. He opined that this was a "possible cause" of the explosion in this case. He noted two other "holes" on the vent cap that could have caused the explosion. Both of those holes, he concluded, were also caused by the vent cap being struck. Rutkoski explained that vent caps are very tight fitting and when people are unable to align them properly, they use whatever is at hand to pound them in, not realizing this will cause damage.[2] Rutkoski testified that the spark could also have entered the battery by the negative terminal if the terminal was broken out on the negative side. However, Tanner testified that he did not take the battery out of its casing.

The pertinent part of the warning on the battery stated:

> Danger, explosive gases. Sparks, flames, cigarettes may explode battery causing severe injury or blindness. Shield eyes and face from battery. Tools and cable clamps can make sparks. Do not use without instructions. Keep battery well ventilated.

There was not a warning on the battery advising against pounding on the vent caps or informing consumers that a spark or flame could access the explosive gases if a vent cap were damaged.

At the close of Tanner's case, Exide moved for a directed verdict on the ground that there was no evidence in the record indicating the battery was negligently designed, the warnings on the battery were inadequate, or the warnings on the battery had any

[2] This testimony was from Rutkoski's deposition, which Tanner's counsel read into the record for impeachment purposes.

causal connection to the explosion of the battery. The trial court granted the motion and entered judgment in favor of Exide.

On appeal, Tanner contends the trial court erroneously exercised its discretion in excluding Runyan's testimony, and, even without that testimony, the trial court erred in directing a verdict in favor of Exide. Tanner contends the battery was in a defective condition when it left Exide's control—that the design was defective in that there was not a warning alerting the consumer that pounding on the vent caps could damage them, and that damaged vent caps could cause an explosion. He asserts there was sufficient evidence to go to the jury on the question whether the warning on the battery was inadequate and thus made the product unreasonably dangerous when used, or misused, in a foreseeable manner.

## DISCUSSION

*Applicable Law—Strict Products Liability*[3]

Under the theory of strict products liability, a manufacturer is liable for the harm caused by a prod-

---

[3] In the trial court, neither the court nor the parties clearly distinguished between the claims of negligence and strict products liability. On appeal, Tanner focuses on strict products liability. Strict products liability allows a plaintiff, in effect, to prove the defendant was negligent as a matter of law without having to establish specific acts of negligence or privity of contract. *See Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 734–35, 218 N.W.2d 279, 282 (1974). Generally, strict products liability claims consider the condition of the product, and negligence claims consider the manufacturer's behavior and whether a standard of reasonable care was met; however, when the strict

uct to the user or consumer if: (1) the product was in defective condition when it left the possession or control of the seller, (2) it was unreasonably dangerous to the user or consumer, (3) the defect was a cause of the plaintiff's injuries or damages, (4) the seller engaged in the business of selling such product (it was not an isolated transaction unrelated to the principal business of the seller), and (5) the product was one that the seller expected to, and that did, reach the user or consumer without substantial change in the condition it was in when he or she sold it. *Dippel v. Sciano*, 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (1967); *see also Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d 882, 892, 275 N.W.2d 915, 919 (1979). In this case we are concerned only with the first three factors, because it is undisputed that Exide engaged in the business of selling batteries and that Exide expected its battery to reach the consumer without substantial change. Although determining whether a product is defective and whether a product is unreasonably dangerous are two separate inquiries, *see Sumnicht v. Toyota Motor Sales U.S.A., Inc.*, 121 Wis. 2d 338, 367, 360 N.W.2d 2, 15 (1984), as a practical matter courts usually address them together. *See, e.g., id.* at 370–74, 360 N.W.2d at 16–19.

products liability claim is that the product was defective because the warnings were inadequate, the plaintiff must prove the defendant had a duty to warn and the danger was reasonably foreseeable. *See Schuh*, 63 Wis. 2d at 739–41, 218 N.W.2d at 285–86; *see also Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1317–18 (7th Cir. 1983) (applying Wisconsin law). In effect, this requirement of proof is the same as that needed for a claim of negligence. *See Gracyalny*, 723 F.2d at 318.

In order for a defective design to render a product unreasonably dangerous the defect must be hidden from the ordinary consumer, that is, not an open and obvious defect. *Kozlowski*, 87 Wis. 2d at 894, 275 N.W.2d at 920. Wisconsin has adopted comments "g" and "i" to section 402A of the Restatement of Torts, which explain that a product is defective if it is "in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him"; and that for a product to be considered "unreasonably dangerous," it "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* at 893, 275 N.W.2d at 920 (quoting RESTATEMENT (SECOND) OF TORTS § 402A, cmts. g and i (1965)). Typically, whether a condition is an open and obvious danger is a question of fact for the jury to determine. *Hansen v. New Holland North America, Inc.*, 215 Wis. 2d 655, 667, 574 N.W.2d 250, 254 (Ct. App. 1997), *review denied*, 217 Wis. 2d 521, 580 N.W.2d 690 (1998); *see also Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1322 (7th Cir. 1983) (applying Wisconsin law).

If a product is designed and manufactured to be as safe as possible, but still contains a hidden danger, the manufacturer has a duty to warn the consumer of the hidden danger. *See Kozlowski*, 87 Wis. 2d at 899, 275 N.W.2d at 922–23. The warning must be adequate and appropriate under the circumstances. *See Schuh*, 63 Wis. 2d at 739, 218 N.W.2d at 285. A manufacturer must "anticipate the environment which is normal for the use of his product." *Kozlowski*, 87 Wis. 2d at 896,

367

275 N.W.2d at 921. In other words, the manufacturer has the duty to foresee all reasonable uses and misuses and the resulting foreseeable dangers. *Schuh*, 63 Wis. 2d at 742–43, 218 N.W.2d at 286–87. The duty to warn arises when the manufacturer has, or should have, knowledge of a dangerous use. *Krueger v. Tappan Co.*, 104 Wis. 2d 199, 207, 311 N.W.2d 219, 223 (Ct. App. 1981).

An inadequate warning on a product can, by itself, render the design defective. *Westphal v. E.I. du Pont de Nemours & Co.*, 192 Wis. 2d 347, 363, 531 N.W.2d 386, 391 (Ct. App. 1995); *Krueger*, 104 Wis. 2d at 206, 311 N.W.2d at 223 (citing RESTATEMENT (SECOND) OF TORTS § 402A cmts. h and j). Whether a warning is adequate is generally an issue of fact to be determined by the jury. *See, e.g., Schuh*, 63 Wis. 2d at 739, 218 N.W.2d at 285; *Gracyalny*, 723 F.2d at 1316. The jury is to consider all pertinent factors, such as the likelihood of a particular accident taking place and the seriousness of the consequences, in deciding whether the warning is sufficient to apprise the user of the particular hazard. *Schuh*, 63 Wis. 2d at 739, 218 N.W.2d at 285.

The standard for causation in strict products liability cases is:

> whether the defect was a substantial factor in producing the injury. . . . "It need not be the sole factor or the primary factor, only a 'substantial factor.' The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense. There may be several substantial factors contributing to the same result."

*Sumnicht*, 121 Wis. 2d at 358, 360 N.W.2d at 11 (citations and quoted source omitted).

*Expert Testimony*[4]

We first consider the trial court's rulings excluding portions of Runyan's testimony. It appears that Runyan would have testified as follows: (1) the design of the vent caps is defective and safer designs are available; (2) the explosion was caused by a spark that entered through an opening in a damaged vent cap; (3) vent caps of this type are difficult to put on properly and are easily bent, and the damage to this particular vent cap was caused by someone applying an object to it with force creating an entry for a spark; and (4) the warnings on the battery are insufficient because they do not alert the user that pounding on the vent caps turns the battery into a "bomb." We conclude that the trial court properly exercised its discretion in excluding Runyan's testimony on the design of the battery and the cause of the explosion, but erroneously exercised its discretion in excluding his testimony on damage to the vent cap and the adequacy of the warnings.

Whether a witness is qualified as an expert is a discretionary determination for the trial court. *Wester*

---

[4] Tanner made the alternative argument, both at trial and on appeal, that Runyan's proffered testimony should have been admitted as a lay witness' opinions under § 907.01, STATS. However, opinions admitted under that statute are "limited to those opinions or inferences which are rationally based on the perception of the witness," § 907.01, and do not include conclusions, like those of Runyan in this case, that are also based on the witness' independent knowledge or expertise. *See Wester v. Bruggink*, 190 Wis. 2d 308, 319, 527 N.W.2d 373, 378 (Ct. App. 1994).

*v. Bruggink*, 190 Wis. 2d 308, 317, 527 N.W.2d 373, 377 (Ct. App. 1994). We affirm discretionary determinations if they have a reasonable basis and are made in accordance with accepted legal standards and the facts of record. *James v. Heintz*, 165 Wis. 2d 572, 579, 478 N.W.2d 31, 34 (Ct. App. 1991). An expert's opinion is admissible if it is relevant and will assist the trier of fact in determining an issue of fact, and if the witness is qualified as an expert. *State v. Peters*, 192 Wis. 2d 674, 687–88, 534 N.W.2d 867, 872 (Ct. App. 1995). Section 907.02, STATS., states:

> **Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Since Exide does not argue either that the testimony is not relevant or that specialized knowledge would not assist the trier of fact in this case, the only issue is whether Runyan was "qualified as an expert by . . . experience." Whether an expert witness is qualified to give an opinion depends upon whether he or she has superior knowledge in the area in which the precise question lies. *Black v. General Elec. Co.*, 89 Wis. 2d 195, 212, 278 N.W.2d 224, 231 (Ct. App. 1979). When determining whether a witness qualifies to give an opinion as an expert, the trial court should compare the technical and scientific expertise of the witness with the complexity of the point at issue. *Wester*, 190 Wis. 2d at 319, 527 N.W.2d at 378.

We therefore review Runyan's qualifications with respect to each of the specific areas of proffered testimony. Runyan has worked with automobile batteries

for over thirty years—as an auto mechanic at various dealerships and as a consultant. He has taught auto mechanics at Madison Area Technical College, including instruction on the battery. At one of the places Runyan worked, he took batteries apart and salvaged the lead. In his attempts to reuse parts of old batteries, he has experimented with different vent caps and how they fit. He has "disassembled thousands of batteries" and was able to see how they were put together. He understands the chemical and electrical processes of a battery, and, he testified, he knows what causes batteries to explode. He was involved in investigating the cause of an exploded battery two other times; and he has "seen hundreds of batteries that had exploded." He has never been involved in designing batteries or testing alternative designs. He has no experience or training in creating warnings for batteries and is not aware of the applicable federal regulations regarding the warnings on batteries. He has examined the salvaged pieces of the battery in this case.

■■■

A witness's personal knowledge may be proved by his or her own testimony, and that testimony must be accepted by the trial court unless it finds the testimony not credible or there is contrary credible evidence that undercuts the proffered foundation. *James*, 165 Wis. 2d at 579, 478 N.W.2d at 34. The trial court did not state that Runyan was not credible, and there was not any evidence to the contrary. Therefore, we assume the trial court accepted Runyan's testimony on his training and experience.

The trial court excluded Runyan's testimony on the design because he lacked adequate expertise in designing batteries. This is a reasonable conclusion

that is supported by the record and employs a correct legal standard.

The trial court excluded Runyan's testimony on how this explosion occurred after learning that Runyan was involved in investigating the cause of an exploded battery on only two other occasions. This ruling presents a closer question, because Runyan testified that he knows from his experience the chemical and electrical processes of batteries and what causes them to explode, and he has seen hundreds after they had exploded. However, his actual experience investigating the cause of explosions is limited to two. We conclude a court could reasonably decide this experience is insufficient to qualify Runyan as an expert on this point.

We are uncertain why the trial court did not permit Runyan to testify on the difficulties in using this type of vent cap, the way in which this one became damaged, and the possibility or probability of a spark entering through an opening caused by the damage.[5] The trial court did not state its reasoning. It may be that the court considered this part of the testimony on the cause of the explosion. However, we are persuaded that Runyan's examination of this vent cap and his experience in examining, disassembling and experimenting with old batteries, plus his general experience as an auto mechanic, is sufficient to permit him to testify as an expert on these three points. We are unable to discern a reasonable basis in the record for excluding this testimony.

---

[5] The parties and the trial court at times treated all four questions as one when evaluating Runyan's qualifications, and, in response to various arguments of the parties, the trial court changed its ruling several times. This makes it somewhat difficult to identify and evaluate the court's reasons for its final ruling against admission.

The trial court excluded Runyan's testimony that the warnings were inadequate because Runyan lacked adequate knowledge "as to the standard required for warnings . . . utilized by the industry at the time the item was manufactured" to opine on the sufficiency of the warnings. The court accepted Exide's view of the law that a witness must have expertise in writing warnings in order to offer an expert opinion on the adequacy of the warnings. Since Wisconsin courts have not addressed this precise issue, we look to the case law of other jurisdictions for guidance. We conclude expertise in writing warnings is not essential in order to testify as an expert on whether the warnings on a product are adequate.

A New Jersey court in *Shatz v. TEC Tech. Adhesives*, 415 A.2d 1188, 1194 (N.J. Super. Ct. App. Div. 1980), determined that an expert on the properties of the product could testify on the adequacy of warnings:

> While it is true that the judge could find that [the proffered expert] had no special expertise in the actual writing of labels, certainly his knowledge of the product was sufficient to permit him to state a conclusion as to the adequacy of the warnings. . . . To know the sufficiency of warnings it is not necessary to be a writer [of warnings].

An Indiana court made a similar ruling that whether a witness has "special training or experience in reading and writing warnings . . . is not the test" for whether the witness is qualified to give an expert opinion on warnings. *Ortho Pharmaceutical Corp. v. Chapman*, 388 N.E.2d 541, 553 (Ind. Ct. App. 1979). The court reasoned that the competency of an expert witness has never been limited to only those facts he or she has learned from personal demonstration. Instead, the

court explained, "where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify." *Id.*

Exide cites several cases as support for the proposition that "mere practical knowledge and frequent use of a product does not qualify the user as an expert on . . . warnings." However, none of these cases support this proposition. *See, e.g., McCullock v. H.B. Fuller Co.*, 981 F.2d 656 (2nd Cir. 1992) (holding witness was not qualified to opine on the adequacy of the warnings of a specialized glue because he lacked expertise in *either* the product—was not a chemical engineer, toxicologist or an environmental engineer—*or* the design of warning labels); *Silva v. American Airlines, Inc.*, 960 F. Supp. 528 (D.P.R. 1997) (holding flight attendant could testify as to observation that many people hit their heads on the overhead compartment, but could not give an expert opinion as to the need for a warning because the witness had no specialized knowledge that would assist the trier of fact: the court never indicated that such "specialized knowledge" should be in the area of warnings); *Cummins v. Lyle Industries*, 93 F.3d 362 (7th Cir. 1996) (applying the federal law of *Daubert*, not applicable in Wisconsin, to reject the witnesses untested theory of alternative designs and warnings).

We find the reasoning of *Shatz* and *Ortho Pharmaceutical Corp.* to be persuasive and consistent with Wisconsin law on the admissibility of expert testimony. We conclude that a witness need not have expertise in writing warnings in order to testify on the adequacy of a warning on a product if the witness, through training or experience, has sufficient knowledge on how the

product works, how it is used, and the dangers of the product. We conclude that Runyan's experience has equipped him with the specialized knowledge of the workings, use and dangers of batteries necessary for him to opine, from the perspective of an experienced and qualified user of the product, whether the warnings are adequate.

Exide does not argue that if the trial court did erroneously exclude portions of Runyan's testimony, that error was harmless. We take this as a concession that it was not harmless error. *See State v. Davidson,* 222 Wis. 2d 233, 253–54, 589 N.W.2d 38, 46 (Ct. App.1998), *review granted,* 225 Wis. 2d 487, 594 N.W.2d 382 (1999). While we could reverse and remand for a new trial on this basis alone, we choose to discuss Tanner's challenge to the directed verdict. Since the trial court's ruling on the motion for a directed verdict was based on an incorrect legal standard, as well as the lack of expert testimony once Runyan's testimony was excluded, a discussion of this issue may avoid error in the new trial.

*Directed Verdict*

When reviewing a trial court's decision to direct a verdict, we apply the same standard as the trial court, but also give substantial deference to the trial court's better ability to assess the evidence. *See James,* 165 Wis. 2d at 577, 478 N.W.2d at 33. The standard is whether, viewing the evidence most favorably to the party against whom the verdict is sought to be directed, there is any evidence to sustain a cause of action. *See Carl v. Spickler Enters., Ltd.,* 165 Wis. 2d 611, 624, 478 N.W.2d 48, 53 (Ct. App. 1991). A verdict should be directed only when the evidence gives rise to no dispute

as to material issues, or when the evidence is so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion. *See Voith v. Buser*, 83 Wis. 2d 540, 550, 266 N.W.2d 304, 309 (1978).

The trial court concluded there was nothing in the testimony to show that the battery had a defective vent cap when it left the manufacturer, distributor or retailer. With respect to the warning, the court concluded the manufacturer had no duty to warn against the abuse of this vent cap that had occurred—banging on it to get it to fit. We have already concluded that the trial court properly exercised its discretion in excluding Runyan's testimony that the design of the vent cap was defective and there were safer alternative designs. We therefore agree with Exide that the trial court correctly directed the verdict against Tanner on his claim that the design of the vent caps themselves was defective because they are susceptible to damage and are therefore unreasonably dangerous.

However, with respect to the adequacy of the warnings, the trial court erred in not considering whether there was evidence that the damaged vent cap was a hidden danger and the abuse or misuse that occurred was foreseeable. Even without Runyan's testimony, there was credible evidence from Rutkoski, construed in the light most favorable to Tanner, that the damaged vent cap was a danger not obvious to the ordinary consumer and that pounding on the vent caps to get them to fit was a foreseeable misuse. And with Runyan's testimony, there was sufficient evidence on the adequacy of the warnings.

Rutkoski testified that the vent cap from the battery had three leaks that could allow a spark to enter the battery, come in contact with the hydrogen/oxygen

mixture, and cause an explosion. Rutkoski further testified that, based on the indentations on the top of the vent cap and the crushed plastic on the underside, he believed the leaks in the vent cap were caused by a person pounding on it. Tanner testified he did not notice that the vent cap was damaged.[6] Rutkoski testified that most people think "a battery is a big heavy strong thing and you can hit it with a hammer and it won't damage it." From this evidence a reasonable jury could conclude that the danger created by pounding on the vent caps was a hidden danger, not obvious to the ordinary consumer.

A reasonable jury could also conclude that the misuse of this product was foreseeable. Both Rutkoski and Runyan testified to the difficulty of getting the vent caps on and their knowledge that users frequently banged on the caps to get them to fit.[7]

Exide argues that the battery did warn the user of the danger of explosive gases. However, a general warning is not necessarily adequate to warn of a spe-

---

[6] We recognize that the test of whether a danger is hidden as opposed to open and obvious is an objective test, based on what an ordinary consumer would reasonably expect. *See Vincer v. Esther Williams All-Aluminum Swimming Pool Co.*, 69 Wis. 2d 326, 332, 230 N.W.2d 798 (1975). The testimony that Tanner did not notice the damaged vent caps could be evidence of what an ordinary consumer might observe.

[7] Tanner argues that pounding on the battery was a foreseeable misuse not only because Exide should have known it was possible, but because Exide knew it was possible. Tanner points to the evidence that Exide's expert, who said he knew that people pound on the vent caps, had worked for ten years at General Battery, which was purchased by Exide. In light of our decision, we need not consider this alternative theory of foreseeability.

377

cific danger. *See Kozlowski*, 87 Wis. 2d at 900, 275 N.W.2d at 923 (holding that it was a jury question whether a general warning to avoid excessive pressure was adequate to reveal the danger of an exploding safety ring at a high pressure setting). Based on Runyan's testimony, a reasonable jury could find that the warning "danger, explosive gases" was not adequate to warn users that the battery could explode if the vent caps were pounded on or otherwise damaged.

Exide also argues that Tanner's failure to wear eye protection, contrary to the warning "Shield eyes and face from battery," was a misuse of the battery causing his injury, and therefore we need not consider whether the warnings regarding the vulnerability of the vent caps are inadequate. However, under *Schuh* the fact that a user does not heed one warning relating to a particular danger does not necessarily absolve the manufacturer from liability for failing to warn against a different danger on the same product. In *Schuh*, the plaintiff was injured by a fan that continued to run after he pulled the clutch lever when he slipped from a standing position on a piece of farm machinery. A warning on the machine told users to keep off the implement unless seated or on a platform, but did not warn the user that the fan would continue to run after the clutch lever had been pulled. The supreme court concluded that the user's misuse of the product—standing on the machine contrary to the warning—did not bar his recovery for an alleged defect in the design and warning of the clutch lever. The court stated:

> If the manufacturer was able to foresee the necessity of warning users to stay off the machine, it must have foreseen that under some circumstances

> users and others would stand on the implement. Thus, standing on the machine was a "misuse" of it, such as was foreseeable by the defendant and such misuse would not ipso facto bar recovery. Rather, it was an act to be appropriately considered by the jury in determining the contributory negligence of the plaintiff.

*Schuh*, 63 Wis. 2d at 743, 218 N.W.2d at 287. Following *Schuh*, we conclude that Tanner's failure to follow the warning to shield his eyes and face does not ipso facto bar recovery on his claim that Exide should have warned of the danger of pounding on the battery.

Exide also argues there was no evidence that the lack of warning on the dangers of pounding on the vent cap caused the explosion. We disagree. Rutkoski testified that, in his expert opinion, the explosion was caused by either a leak in the vent cap (one of three holes, all of which Rutkoski opined were caused by someone pounding on the vent cap) or the negative terminal being taken out of its casing. Tanner testified that he did not take the battery out of its casing. The jury could choose to believe that the explosion was caused by a leak in the vent cap. *See State v. Kienitz*, 221 Wis. 2d 275, 303, 585 N.W.2d 609, 620 (Ct. App. 1998) (the fact-finder may accept certain portions of an expert's testimony while rejecting other portions), *review granted*, 221 Wis. 2d 653, 588 N.W.2d 631 (1998). And, based on Tanner's testimony, a reasonable jury could find that the explosion caused his injuries. Assuming a jury made these findings, it could also reasonably determine that Tanner's injuries could have been prevented if no one had pounded on the vent cap. If the battery had contained a warning against pounding on the vent caps, a fact-finder could "reasonably assume that it [would have been] read and heeded" by

379

the users prior to Tanner. *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965).[8] Therefore, a reasonable jury could determine that the lack of such a warning was a substantial factor in causing Tanner's injuries. *See Ortho Pharmaceutical Corp. v. Chapman*, 388 N.E.2d 541, 555 (Ct. App. Ind. 1979) ("Where warnings are inadequate . . . the presumption [that they would have been read and heeded] is in essence a presumption of causation.").

Exide argues, consistent with the philosophy of comment j, that Tanner's lack of eye protection caused the injury. Although a jury might find that not wearing eye protection was a substantial factor in causing Tanner's injuries, such a finding does not prevent the jury from also finding that an inadequate warning regarding the vulnerability of the vent caps was also a substantial factor in causing his injuries. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979) ("there can be more than one substantial factor contributing to the same result").

Finally, Exide argues that because Tanner admitted he did not read the warnings on the battery, the lack of adequate warnings cannot, as a matter of law, be a substantial factor in producing his injuries. This argument fails for two reasons. First, the adequacy of

---

[8] RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965) provides in part:

> *Directions or warning.* In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.
>
> . . .
>
> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

warnings is determined by reference to the effect on a reasonable person, regardless of whether the actual consumer read the warnings. *See Hansen v. Crown Controls Corp.*, 181 Wis. 2d 673, 692 n. 15, 512 N.W.2d 509, 518 (Ct. App. 1993), *vacated in part on other grounds*, 185 Wis. 2d 714, 519 N.W.2d 346 (1994). Second, an adequate warning in this case may have prevented Tanner's injuries by alerting *a prior user of the battery* not to pound on the vent caps. Therefore, the fact that Tanner did not read the warnings does not support a directed verdict.

## CONCLUSION

We conclude that the trial court erroneously exercised its discretion in excluding Runyan's testimony on the damage to the vent cap and the inadequacy of the warning. We also conclude that, with this testimony, Exide was not entitled to a directed verdict. We therefore reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.