STATE of Wisconsin, Plaintiff-Respondent,

v.

James SHARP, Defendant-Appellant.†

Court of Appeals

*No. 92–0190–CR. Submitted on briefs September 2, 1992.—Decided December 7, 1993.*

(Also reported in 511 N.W.2d 316.)

†Petition to review denied.

641

For the defendant-appellant the cause was submitted on the briefs of *Gerald P. Boyle*, of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Mary V. Bowman*, assistant attorney general, of counsel, of Madison.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   James Sharp appeals from a judgment of conviction following a trial in which the jury found him guilty of one count of first-degree sexual assault of a child, in violation of sec. 948.02(1), Stats. He challenges (1) the trial court's refusal to allow evidence of the child's prior conduct that, he claims, may have been the source of the child's sexual knowledge; and (2) the trial court's allowance of what he deems cumulative hearsay testimony recounting the child's allegations. He also claims that the evidence was insufficient to support the conviction. We affirm.

## I. Background

Sharp was convicted of having sexual contact with the seven-year-old daughter of his live-in girlfriend. The child testified that on the night of the January 1990 incident, she had lain down on her mother's bed to nap. Sharp was also on the bed. The child said that when she "rubbed up against him," Sharp pushed hard against her and rubbed and pushed his penis against her "private part" or "pee pee" through their clothes. Asked to explain what she meant by "private part," the child indicated her vaginal area. She also testified about four other incidents in which Sharp had sexual contact with her: penis to anus, hand to vagina, penis to vagina, and hand to breast. Each incident occurred on a different day, the charged incident occurring first. She testified that Sharp told her not to tell her mother because her mother would get mad. The child denied that any other man had touched her in the same ways.

The child's mother testified that Sharp was the first person to suggest that her daughter might be the victim of sexual abuse. The day after the charged incident occurred and before the child disclosed the abuse, Sharp told the mother that the child had rubbed against him. Sharp denied abusing the child and maintained that she was abused by her father, with whom she had regular visitation. Both the mother and Sharp reported that the child's behavior deteriorated during the time the three lived together, becoming most problematic whenever she returned from visiting her father. Additional factual details will be provided in our discussion of the issues.

## II. Prior Conduct/Sexual Knowledge

When the child and her mother testified, Sharp attempted to elicit testimony of an incident involving a neighbor boy. According to Sharp, the victim and the boy had exposed themselves to each other. Sharp contended that the information was relevant to show how the victim could have gained knowledge of sexual matters.

The State objected, invoking the protection of Wisconsin's rape shield law. *See* sec. 972.11(2), Stats. The law prohibits admission of evidence referring to the victim's prior "sexual conduct" except for specified exceptions.[1] The rape shield law provides:

> [A]ny evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial. ....

Section 972.11(2)(b). "Sexual conduct" is defined as "any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and lifestyle." Section 972.11(2)(a). Whether a display of genitalia is "behavior relating to sexual activities of the complaining witness" will depend upon the circumstances. Obviously, for example, display to a prostitute

---

[1] The exceptions are evidence of (1) the "complaining witness's past conduct with the defendant[,]" (2) "specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered[,]" and (3) "prior untruthful allegations of sexual assault made by the complaining witness." Section 972.11(2)(b), Stats.

almost always would relate to sexual activity while display to a doctor almost always would not.

Here, counsel for Sharp first asserted that the event involved the victim and the neighbor boy exposing *their* genitalia to *each other*. Later, however, he said, "All I want to do is . . . ask if [the boy] showed her anything. And, and then we can leave it rest at that." Sharp's counsel explained, "I'm trying to find out . . . how she gained her knowledge about sex. . . . I want to find out what she gained through [the boy]. And . . . to that extent I don't think the statute prohibits it." He did not provide an offer of proof to develop the circumstances of the neighbor boy's display of genitalia nor did he attempt to explain whether or how such a display constituted "behavior relating to sexual activities of the complaining witness."

The trial court ruled the evidence inadmissible under the rape shield law because it did not fall within any of the statutory exceptions. As the parties acknowledge in their briefs to this court, the trial court was correct: the victim's and neighbor's alleged displays of genitalia do not fall within any statutory exception to sec. 972.11(2)(b), Stats. Sharp argues, however, that under *State v. Pulizzano*, 155 Wis. 2d 633, 456 N.W.2d 325 (1990), denial of the opportunity to explore the victim's source of sexual knowledge violated his constitutional right to confront the victim and her mother.

██

*Pulizzano* recognizes that under the facts of a given case, the rape shield law may unconstitutionally infringe upon a defendant's confrontation right. *Id.* at 647-48, 456 N.W. 2d at 331. Thus, even though Wisconsin's rape shield law makes no statutory exception for "source of knowledge" evidence, such evidence is admissible if its exclusion would deny a defendant's

Sixth Amendment constitutional right of confrontation. *Id.* at 633, 647-48, 456 N.W.2d at 329, 331. Whether the confrontation right is infringed presents a question of law, which this court reviews *de novo. Id.* at 648, 456 N.W.2d at 331.

While concluding that a defendant has a constitutional right to present evidence of a complainant's prior sexual conduct for the limited purpose of proving an alternative source of the complainant's sexual knowledge, *Pulizzano* requires a defendant to raise the issue prior to trial and to provide an offer of proof. *Id.* at 656, 456 N.W.2d at 335. *Pulizzano* also specifies information that must be shown through the defendant's offer of proof. Among the required showings is that the alleged prior acts "closely resemble[d]" the acts alleged in the case at trial. *Id.*

Sharp did not seek a pretrial ruling as required by *Pulizzano.* Sharp did not advise the trial court that he was raising a confrontation issue; he argued that the evidence was not within the rape shield law's prohibition. Counsel merely stated that all he intended to do was "ask if [the neighbor] showed her anything." That summary certainly did not provide "the substance of the evidence" from which admissibility would be "apparent from the context within which questions were asked." *See* sec. 901.03(1)(b), Stats.[2] After all, absent an offer of proof detailing the circumstantial

---

[2] **901.03 Rulings on evidence. (1)** EFFECT OF ERRONEOUS RUL-ING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

. . . .

　　(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

similarities, it is not "apparent" that one child's display of genitalia to another child closely resembles or relates in any way to an adult's sexual assault of a child.[3]

It was Sharp's burden to show that the evidence was admissible. *State v. Jenkins*, 168 Wis. 2d 175, 187-88, 483 N.W.2d 262, 266 (Ct. App.), *cert. denied*, 113 S.Ct. 608 (1992). He did not do so. Accordingly, evidence regarding the alleged display of genitalia between the victim and the neighbor boy was properly excluded.

## III. Child's Prior Statements and Rule of Completeness

Sharp also contends that the trial court erred by allowing hearsay testimony. At the trial, the child's mother testified first, without objection, about her daughter's disclosures to her. Next, the child testified about the assault. Then, four witnesses testified: (1)

"[A]n objection on the grounds of hearsay does not serve to preserve an objection based on the constitutional right to confrontation." *State v. Nelson*, 138 Wis. 2d 418, 439, 406 N.W.2d 385, 393-94 (1987). Unless an objection on confrontation grounds is made at trial "with sufficient particularity," the issue is waived. *State v. Gove*, 148 Wis. 2d 936, 940-41, 437 N.W.2d 218, 220 (1989).

[3] On appeal, Sharp argues that the trial court failed to follow the requirements of *Pulizzano* because it "did not wait" for the offer of proof that Sharp "should have, at least, been able to make." The record reveals, however, that although defense counsel briefly summarized the subject of his intended questioning, he never asked to provide a testimonial offer of proof. The trial court is not required to offer that opportunity, *sua sponte.*

Arlene Biesiada, a close family friend; (2) Roxane Bruyette, a county child protection services worker; (3) Jan Gawin, a police officer; and (4) Dr. Mary Hegenbarth, a Children's Hospital emergency room pediatrician. All four recounted the statements the child made to them during the two to three months after the assault.

Sharp repeatedly objected to the testimony from these four witnesses on numerous grounds. He contended that the testimony was irrelevant, prejudicial, and merely cumulative hearsay, and that the testimony was not admissible as prior consistent statements. The trial court concluded that the statements were "certainly relevant and not cumulative," and were admissible as prior consistent statements.

On appeal, Sharp contends that the trial court erred in admitting the child's out-of-court statements as prior consistent statements. He alleges that the child fabricated the incidents from the beginning. Sharp argues, therefore, that because the child's statements to the four witnesses did not precede an alleged recent fabrication, the prior statements were inadmissible. *See State v. Peters*, 166 Wis. 2d 168, 177, 479 N.W.2d 198, 201 (Ct. App. 1991) ("prior consistent statements must predate the alleged recent fabrication or improper influence or motive before they have probative value" so as to be admissible).

The admissibility of evidence is within the trial court's discretion, and this court will not reverse the trial court's decision unless it misused that discretion. *Id.* at 175, 479 N.W.2d at 200. If the exercise of discretion was premised on an error in the application of law, however, a misuse of discretion occurred. *Id.* Further, our analysis is not bound by the trial court's analysis of

whether a statement is hearsay or under what exception it may be admissible. *See id.* at 175-76, 479 N.W.2d at 200-01. These are matters of law, *id.* at 175, 479 N.W.2d at 200-01, which we decide *de novo, State v. Sauceda,* 168 Wis. 2d 486, 492, 485 N.W.2d 1, 3 (1992). When a trial court's holding is correct, this court may affirm the trial court on grounds not utilized by that court. *State v. Baudhuin,* 141 Wis. 2d 642, 648, 416 N.W.2d 60, 62 (1987).

We agree with the trial court's conclusion that all four challenged statements were "certainly relevant and not cumulative." Strict application of *Peters,* however, would preclude their admission as prior consistent statements because the statements did not precede the alleged fabrication.[4] We conclude, how-

---

[4] Although the principle recognized in *Peters,* restricting admission of prior consistent statements to those that precede an alleged fabrication, is based on solid law and logic, its *unqualified* application in all circumstances may go too far. Whether the principle, usually termed the "pre-motive rule," is absolute or qualified is an issue that "has divided the [federal] circuits for years." *United States v. Tome,* 3 F.3d 342, 350 (10th Cir. 1993). Most recently, in an aggravated sexual abuse trial involving a five-year-old victim, a federal district court admitted prior consistent hearsay statements even though they did not precede an alleged fabrication. Affirming, the federal court of appeals for the tenth circuit joined what it identified as a slender majority of federal circuits endorsing the pre-motive rule as qualified, not absolute:

> Those courts that have adopted the pre-motive rule reason that prior consistent statements are "of no probative value to rebut an allegation of recent fabrication when the declarant's motive in making both statements was the same for the simple reason that mere repetition does not imply veracity." This may be true. As articulated, however, the pre-motive requirement is a function of the relevancy rules, not the hearsay rules. But even as a function of relevance, the pre-motive rule is clearly too broad: a per se rule is

ever, that the challenged statements were admissible under the rule of completeness.

> untenable because it is simply not true that an individual with a motive to lie always will do so. Rather, the relevance of the prior consistent statement is more accurately determined by evaluating the strength of the motive to lie, the circumstances in which the statement is made, and the declarant's demonstrated propensity to lie.
>
> In rejecting the pre-motive rule, however, we do not overlook or devalue the veracity concerns which underlie the rule. To the contrary, we recognize that prior consistent statements made after a strong motive to lie has arisen may evidence only that the declarant is a consistent liar. To determine whether a statement has probative value apart from its repetition, we follow the approach taken by the Ninth Circuit in *[United States v.] Miller. Miller* treats a declarant's motive to lie as only one factor — albeit a crucial one — to be considered when evaluating the relevancy of a prior consistent statement under Federal Rules of Evidence 402 and 403. In doing so, "the trial judge must evaluate whether, in light of the potentially powerful motive to fabricate, the prior consistent statement has significant 'probative force bearing on credibility apart from mere repetition.' "
>
> . . . .
>
> Applying this analysis to the present case, we conclude that the district court properly admitted evidence of A.T.'s prior consistent statements under Rule 801(d)(1)(B). The record reveals that A.T. spontaneously made her initial allegation of abuse to her baby-sitter. On cross-examination, Tome implied that A.T. fabricated the allegations about her father because she wanted to live with her mother. Although this argument does present some motive to lie, we do not believe that it is a particularly strong one. Moreover, Tome's contention would require us to believe that A.T.'s statements were the result of a calculated scheme to deceive. Yet Tome has presented no evidence that the five-year-old A.T. possessed the ability to appreciate the causal relationships inherent in the conception and implementation of such a scheme. Under these circumstances, we believe that A.T.'s consistent statements do carry probative force apart from mere repetition. We therefore find no abuse of discretion in admitting these prior consistent statements.

*Id.*, at 350-51 (citations and footnotes omitted).

Sharp's attorney cross-examined the child in a manner that explicitly suggested that her conversations with Hegenbarth, Bruyette, and Biesiada influenced her recall and description of the sexual abuse.

Q: Okay. Do you remember — you remember telling a doctor [Hegenbarth] what happened to you?

A: Yes.

. . .

Q: And you remember telling a lady who worked for Department of Social Services [Bruyette] what happened to you?

A: Yes.

Q: And you also told the lady that you lived with [Biesiada] what happened to you, is that right?

A: Yes.

. . .

Q: Okay. Do you think your memory of what happened is better now . . . than when it happened?

A: I don't know.

Q: It might be?

A: Might.

Q: Some of the details are a little — are a little better now, a little clearer in your mind?

A: Yes.

Q: And they've become clearer after you talked to all of these people?

A: Yes.

Q: And these people have helped you remember, have they not?

A: Yes, they did.

Q: And they helped sort through a lot of the details, didn't they?

652

A:     Yes.

In addition to questioning the child regarding her interviews with Hegenbarth, Bruyette, and Biesiada, Sharp's attorney also cross-examined the child regarding her pre-trial communication with unspecified "other people. . . ." This cross-examination implicitly referred to the child's interview with Officer Gawin. While this was relatively clear from the context of the cross-examination and circumstances of the case, any lingering doubt about whether Gawin was one of these "other people" was erased when counsel cross-examined Gawin to expose that the child, in her interview with Gawin, "wasn't able to remember a lot of detail," and "never indicated" numerous, specific aspects of her allegations against Sharp.

Thus, Sharp's cross-examination of the child suggested that her account of sexual abuse was influenced by Hegenbarth, Bruyette, Biesiada, and Gawin and, in effect, that her testimony was affected by those who interviewed her. Under the rule of completeness, the State could offer the testimony of the specific content of the challenged interviews and conversations to address the implications of Sharp's cross-examination of the child.

██ The supreme court has recognized the principle embodied in the rule of completeness as a "familiar rule of evidence" in Wisconsin since at least 1872. *State v. Hill*, 30 Wis. 416, 421 (1872) (if state gives portion of previous conversations by competent testimony, defendant has right to introduce whole conversation). The rule "require[s] that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a fair and impartial under-

standing' of the admitted portion." *United States v. Marin*, 669 F.2d 73, 84 (2nd Cir. 1982) (citations omitted). One of the considerations upon which the rule of completeness is based is the need to correct "the misleading impression created by taking matters out of context." Wis. R. of Evid., 59 Wis. 2d R23, Federal Advisory Committee's Note (1974).

The rule of completeness is codified at sec. 901.07, Stats.[5] Based upon Fed. R. Evid. 106,[6] sec. 901.07 is limited to "a writing or recorded statement" for unexplained "practical reasons." Wis. R. of Evid., 59 Wis. 2d R23, FEDERAL ADVISORY COMMITTEE'S NOTE. The common law rule, however, has no such limitation, and *Hill* applied the rule to "whole conversations." *Hill*, 30 Wis. at 421. In 1898, the supreme court reiterated that the doctrine applied to conversations when it wrote that "all parts of a conversation, bearing on the subject in controversy must be taken together. . . ." *Fertig v. State*, 100 Wis. 301, 305-6, 75 N.W. 960, 961-62 (1898). *See also Wilson v. State*, 184 Wis. 636, 647, 200 N.W. 369, 374 (1924) (" 'right to give the whole of such conversation, at least so far as it has relation to the subject matter of the action, and is not confined to that particu-

---

[5] Sec. 901.07, Stats., states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

[6] FED. R. EVID. 106 states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

lar part thereof given by his adversary.' "). Further, to confine the rule of completeness to "a writing or recorded statement" would be to ignore its purpose:

> Rule 106 governs only writings, since in practice verbal precision cannot be expected when the source of evidence as to an utterance is the memory of a witness. However, courts historically have required a party offering testimony as to an utterance to present fairly the "substance or effect" and context of the statement. In other words, while verbal precision may be unnecessary, the testimony "should at least represent the tenor of the utterance as a whole, and not mere fragments of it."

*United States v. Castro*, 813 F.2d 571, 576 (2nd Cir. 1987) (citations omitted).

Under the rule of completeness, otherwise inadmissible evidence will be admissible.

> Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court.

*United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986).

Significantly for the instant case, this is so even if the testimony is hearsay and would not be admissible as a prior consistent statement because it did not precede an alleged recent fabrication. Further, and again with particular significance to the statements Sharp challenges, the application of the rule of completeness

655

is not precluded even where the line between consistency and inconsistency of prior statements is blurred:

> When the prior statement tends to cast doubt on whether the prior inconsistent statement was made *or on whether the impeaching statement is really inconsistent with the trial testimony,* its use for rehabilitation purposes is within the sound discretion of the trial judge. Such use is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. *It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principle of completeness, though not a precise use of Rule 106.*

*United States v. Pierre,* 781 F.2d 329, 333 (2d Cir. 1986) (emphasis added).

Moreover, the rule of completeness may logically extend beyond the limits of a single document, interview, or other unit of communication. A commentary on the background and purpose of Rule 106 has noted that "occasionally the introduction of evidence of a single seemingly complete written or recorded statement will call for the introduction of evidence of apparently separate written or recorded statements." 1 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE, sec. 49, 352 (1977). As Wigmore explained,

> [t]he whole that is to be considered is obviously not the whole of a phrase or a paragraph, any more than it is the whole of the printer's line or page, but the whole of the thought, — that is, such a quantity of utterance as the utterer has indicated to be distinct and entire in itself, for the purpose of representing a distinct thought. . . . Thus the possibilities are infinite and the boundaries indefinite, in this search for

entirety of utterance. It will be difficult for the law, in applying the principle, to employ any fixed test.

7 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW, sec. 2094, at 475 (3d ed. 1940), quoted in Louisell & Mueller, *supra* at 354.

■

In this case, Sharp's cross-examination of the child implied that the four challenged witnesses and others influenced the child's testimony. Therefore, although the challenged statements recounted by all four witnesses may not have been admissible as prior consistent statements, the statements, together with the child's testimony, provided the jury the opportunity to evaluate whether incompleteness or inconsistency within and among the interviews indicated improper influence on the child's testimony. Thus, the challenged statements were admissible under the rule of completeness.[7]

---

[7] Although, until now, these principles have not been applied to a child's hearsay disclosures of sexual abuse, we note that Professor John E.B. Myers, author of the definitive treatise, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES, recently suggested the soundness of this concept when considering evidence of a child's videotaped interview. Although the context is somewhat different, the concepts Professor Myers articulates are equally applicable to this case.

> Opponents of videotaping worry that when the tape becomes the center of attention, the child may appear unconvincing. Indeed, defense counsel may concentrate on a lackluster videotape to distract the jury from the child's other statements. Although there is reason for concern about undue emphasis on a tape, the solution is not to discourage videotaping, but to turn to the long established evidentiary principle known as the rule of completeness. When one party takes a statement out of context, the rule of completeness allows the other party to complete the picture by admitting the remainder of the statement. Wigmore wrote:

## V. Sufficiency of Evidence

Sharp also contends that the conviction was not supported by sufficient evidence. He cites inconsistencies among the testimony of the child and the statements reported by other witnesses. He also identifies the testimony of prosecution witnesses that could support his various theories, and he gives weight to his own testimony and to that of other defense witnesses. He further suggests that the jury should have considered the prosecution's failure to call the victim's father and pediatrician as witnesses.

In a criminal case, the standard for reviewing the sufficiency of the evidence is whether the evidence was sufficient to prove the defendant's guilt beyond a rea-

---

The general principle, then — which may be termed the principle of completeness — that the whole of a verbal utterance must be taken together, is accepted in the law of evidence; for the law in this respect does no more than recognize the dictates of good sense and common experience.

. . . .

We must compare the whole, not because we desire the remainder for its own sake, but because without it we cannot be sure that we have the true sense and effect of the first part. . . . [T]he greatest possibilities of error lie in trusting to a fragment of an utterance without knowing what the remainder was.

. . . .

The rule of completeness applies . . . to videotaped interviews. . . . when defense counsel focuses the jury's attention on one aspect of a taped interview, the prosecutor may offer other portions of the tape "which ought in fairness to be considered contemporaneously with it."

John E. B. Myers, *Investigative Interviews of Children: Should They Be Videotaped?*, NOTRE DAME J. L. ETHICS & PUB. POL. 371, 382-383 (1993) (citations omitted).

sonable doubt. *See State v. Teynor*, 141 Wis. 2d 187, 204, 414 N.W.2d 76, 82 (Ct. App. 1987). An appellate court will affirm a conviction if it can conclude that the jurors, acting reasonably, could be convinced, beyond a reasonable doubt, by evidence they were entitled to accept as true. *Id.* Where there are inconsistencies within a witness's testimony or between witnesses' testimonies, the jury determines the credibility of each witness and the weight of the evidence. *State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386, 389 (Ct. App. 1985). Accordingly, this court does not assess the credibility of witnesses or weigh the evidence. This court will not substitute its judgment for the judgment of the jury unless the evidence supporting the jury's verdict conflicts with nature or the fully established facts, or unless the testimony supporting and essential to the verdict is inherently and patently incredible. *See State v. Clark*, 87 Wis. 2d 804, 816, 275 N.W.2d 715, 721 (1979).

In this case, the trial court instructed the jury that to find Sharp guilty of a violation of sec. 948.02(1), Stats., it must be convinced beyond a reasonable doubt that Sharp had sexual contact with the child and that the purpose of Sharp's contact was sexual arousal or gratification. The instructions correctly defined sexual contact as the intentional touching of the child's vaginal area, either directly or through clothing, by the use of a body part or an object. The child's testimony alone was legally sufficient to satisfy each element and support the jury's verdict. Apparently, the jury rejected Sharp's version of the events and resolved any inconsistencies in the victim's various statements in a manner favoring a guilty verdict. Nothing in the child's account, either directly or as related by other witnesses, was inherently or patently incredible in any

659

way. Further, the failure of the child's father and pediatrician to testify does not affect the legal integrity of the jury's verdict. Accordingly, we conclude that the evidence was sufficient to support the guilty verdict.

*By the Court.*—Judgment affirmed.