**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2019AP2218-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015CF3983

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

     PLAINTIFF-RESPONDENT,

  V.

JACKIE HOLLOWAY, II,

     DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  T. CHRISTOPHER DEE and MICHELLE ACKERMAN HAVAS, Judges.  *Affirmed*.

Before Brash, P.J., Dugan and Donald, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jackie Holloway, II appeals his judgment of conviction for possession of a firearm by a felon, as well as the order denying his postconviction motion. Holloway argues that he received ineffective assistance of counsel because his trial counsel failed to introduce evidence that would serve to impeach witnesses to a shooting. After a **Machner**[1] hearing, the postconviction court[2] ruled that Holloway's trial counsel did not perform deficiently and thus rejected Holloway's claim; the court did not address the prejudice prong of the ineffective assistance of counsel analysis.

¶2 We conclude that we need not determine whether trial counsel's performance was deficient, because Holloway has not established that he was prejudiced by that performance. We therefore affirm.

## BACKGROUND

¶3 The charge against Holloway stems from a shooting that occurred in July 2015. Milwaukee Police Officers were dispatched to a residence on South 5th Place in Milwaukee, where they observed A.H. with a gunshot wound to his right leg. One of the witnesses to the shooting—Johnnie Mayfield, who is a friend of Holloway's—told police that he had observed an argument take place between A.H. and Holloway. Mayfield stated that during the argument, he saw Holloway produce a small handgun and shoot A.H. A.H. also subsequently identified Holloway from a photo array as the person who shot him.

---

[1] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] Holloway's postconviction motion was reviewed by the Honorable Michelle Ackerman Havas; we refer to her as the postconviction court.

¶4     Additionally, the police found that Holloway had previously been convicted of the felony offense of possession of an electric weapon. Holloway was ultimately charged only with possession of a firearm by a felon, as a repeater, for the shooting incident.

¶5     The matter proceeded to trial in November 2017.[3] Mayfield testified on behalf of the State. He stated that he and Holloway were "hang[ing] out" on the street when they got into a verbal altercation with someone Mayfield knew as "BooBoo." A younger person, later identified as A.H., joined the argument, yelling obscenities and threatening to shoot Holloway and Mayfield. The argument escalated, at which time Mayfield testified that he saw Holloway pull a small gun from his pocket and shoot A.H. in the leg. On cross-examination, Mayfield admitted that he and Holloway had been sharing a bottle of vodka prior to the shooting. Furthermore, Holloway's trial counsel elicited testimony from Mayfield that he had three prior criminal convictions.

¶6     A.H. also testified for the State. He stated that he was sixteen years old at the time of the shooting, and that he had been riding his bike home from his job at Chuck E. Cheese that night. A.H. testified that he no longer remembered the details of the incident, but that he had not talked to or yelled at the person who shot him prior to the shooting. He further stated that he had subsequently identified Holloway from a photo lineup shown to him by police; he also identified Holloway as the shooter in court during his testimony. On cross-examination, A.H. admitted that he "did not see the actual physical pulling out of the gun and firing," and that

---

[3] Holloway's jury trial was presided over by the Honorable T. Christopher Dee.

he had initially told police that he was running away from Holloway and Mayfield just before he was shot.

¶7      The investigating police detective testified that the police recovered a fired bullet from A.H.'s pants. They also recovered four bullet casings at the scene, as well as a magazine from a handgun that was thrown into a recycling bin in the area where A.H. had been shot. Police attempted to have the magazine tested for DNA, but there was an insufficient amount of DNA present to allow for testing.

¶8      The jury convicted Holloway of the sole charge against him— possession of a firearm by a felon. With the repeater enhancement, he was sentenced to four years of initial confinement, followed by four years of extended supervision.

¶9      Holloway filed a postconviction motion in January 2019. He argued that his trial counsel was ineffective in failing to present evidence that "would have effectively impeached the reliability and credibility" of Mayfield and A.H. Specifically, Holloway asserted that counsel should have attacked inconsistencies in A.H.'s testimony as compared to the police report, such as the fact that he had told police that "both suspects"—Holloway and Mayfield—had shot at him.

¶10     With regard to Mayfield, Holloway contended that Mayfield's three prior convictions for armed robbery provided a motive for him to lie about who had possessed the firearm when A.H. was shot, which should have been emphasized by trial counsel. Holloway also pointed out that in his initial statement to police, Mayfield stated that A.H. had shot himself. Mayfield later told police that he had lied to protect Holloway.

¶11      Additionally, Holloway asserted that there was exculpatory evidence that his trial counsel did not investigate. He alleged that there was another witness to the shooting who told police that the shooter was holding the gun in his left hand; Holloway is right-handed.

¶12      After a *Machner* hearing was held in September 2019, the postconviction court found that Holloway's trial counsel was not deficient in his performance. During the hearing, counsel testified that he had not attacked A.H.'s testimony because he was "a juvenile victim" that he did not want to "go after so aggressively" in front of the jury. Counsel had further explained that attacking A.H.'s testimony would have required calling additional police detectives, which he believed could have potentially opened the door for testimony that would "end up being much more damaging" to Holloway than what they had to gain from impeaching A.H. on points of "varying importance[.]" The court found that these were "appropriate strategic decision[s]" by counsel.

¶13      With regard to Mayfield's testimony, the postconviction court pointed out that trial counsel had learned that Mayfield was going to testify just before he took the stand. Thus, although the court noted that counsel could have been "a little bit more artful in going after Mr. Mayfield's testimony," he did not know what had "made [Mayfield] go from not coming to coming" and thus there was "a real risk in what Mr. Mayfield was going to say" on the stand. Based on those circumstances, the court found that to be a reasonable strategic decision as well.

¶14      With regard to the witness who reportedly saw the gun in the shooter's left hand, the postconviction court noted that this was "a quick eyewitness report" that was not necessarily exculpatory, as people can shift items from one hand to

another. Thus, the court found it reasonable that counsel had not sought out this witness because she would have been "tangential at best[.]"[4]

¶15 In short, in denying Holloway's motion, the postconviction court found that trial counsel's decisions were "appropriate" and "within professional norms," and thus did not constitute deficient performance. The court further stated that counsel's performance did not cause it to "call the reliability of this result into question," although the court did not specifically address the prejudice prong of the ineffective assistance test. This appeal follows.

## DISCUSSION

¶16 As alluded to above, our analysis of an ineffective assistance of counsel claim involves the familiar two-pronged test: the defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove constitutional deficiency, the defendant must establish that counsel's conduct falls below an objective standard of reasonableness." *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. "To prove constitutional prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (citations and one set of quotation marks omitted).

¶17 The court "need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI

---

[4] Holloway did not include this argument in his appellate brief; we therefore deem it to be abandoned, and will not address it on appeal. *See Cosio v. Medical Coll. of Wis., Inc.*, 139 Wis. 2d 241, 242-43, 407 N.W.2d 302 (Ct. App. 1987).

App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854. "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently." *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

¶18     As previously noted, the postconviction court found that Holloway's trial counsel was not deficient, without addressing the prejudice prong of the *Strickland* test. However, in our review of the record, we conclude that we need not analyze whether trial counsel's performance was deficient because Holloway has failed to demonstrate that he was prejudiced by any possible errors of trial counsel. *See id.*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also State v. Thames*, 2005 WI App 101, ¶10, 281 Wis. 2d 772, 700 N.W.2d 285 ("[W]e will affirm the [postconviction] court if the court reached the correct result, even if we employ different reasoning[.]").

¶19     The crux of Holloway's argument is that trial counsel did not sufficiently call into question the credibility of either A.H. or Mayfield. Holloway points out that A.H. claimed to have very little memory of the incident. Holloway also focuses on the inconsistencies between A.H.'s testimony and the statements he gave to police, such as whether both Holloway and Mayfield had guns that night, and whether A.H. was running away from them when he was shot and thus unable to see who shot him. With regard to Mayfield, he suggests that Mayfield had a motive to lie about who had the gun since he was also a convicted felon, and was on extended supervision at the time of the incident.

¶20     However, regardless of A.H.'s exact position when he was shot, and his memory issues at trial, he never wavered in his identification of Holloway as the

shooter. In fact, he identified Holloway in a photo array presented to him by police over a month later, as well as identifying him in court as the shooter. Additionally, the jury heard—in testimony that was elicited by trial counsel in his cross-examination of A.H.—that A.H. was running away from Holloway and Mayfield when he was shot. It was thus the jury's responsibility to determine whether A.H.'s version of events and his memory lapses affected his credibility. *See State v. Sharp*, 180 Wis. 2d 640, 659, 511 N.W.2d 316 (Ct. App. 1993).

¶21 Furthermore, in one of A.H.'s statements to police that was taken prior to his viewing the photo array, he described the two subjects from the incident, with Subject #2 being the person who shot him. He described Subject #1—*not* the shooter—as "chubby"; then, during his trial testimony, he again described the person with the shooter as "chubby," shortly before pointing out Holloway as the shooter. Thus, that police statement by A.H. describing the men involved in the incident—in particular, which one was *not* the shooter—was in fact consistent with his trial testimony.

¶22 Additionally, the jury heard that Mayfield had three prior convictions; again, it was up to the jury to determine whether that affected Mayfield's credibility. *See id.* More importantly, Holloway was charged *only* with being a felon in possession of a firearm in this case, not with the shooting of A.H. Therefore, whether Mayfield also had a gun that night was immaterial to proving the charge against Holloway.

¶23 In sum, based on the evidence, we conclude that any purported errors by trial counsel were not sufficient to undermine our confidence in the outcome. *See Love*, 284 Wis. 2d 111, ¶30. Therefore, Holloway has failed to prove he suffered prejudice as a result of any errors by trial counsel, and his ineffective

assistance claim fails. *See **Smith***, 268 Wis. 2d 138, ¶15. Accordingly, we affirm his judgment of conviction as well as the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.