COURT OF APPEALS
DECISION
DATED AND FILED

August 1, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2022AP1209-CR**

Cir. Ct. No. 2017CF2783

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

JERMICHAEL J. CARROLL,

       DEFENDANT-APPELLANT.

       APPEAL from a judgment and an order of the circuit court for Milwaukee County: JOSEPH R. WALL and GLENN H. YAMAHIRO, Judges. *Affirmed*.

       Before White, C.J., Donald, P.J., and Dugan, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jermichael J. Carroll appeals his judgment of conviction for first-degree reckless homicide with the use of a dangerous weapon, attempted armed robbery, and possession of a firearm by a felon. He also appeals the order denying his postconviction motion.[1] Carroll argues that there was insufficient evidence to support his convictions, and that he was denied his right to a speedy trial. He also argues that he is entitled to sentence modification on the grounds that his sentence is unduly harsh or unconscionable. Upon review, we reject Carroll's arguments and affirm.

## BACKGROUND

¶2 The charges against Carroll stem from an incident that occurred on May 31, 2017. According to the criminal complaint, Dylan Steffen and his friend, Z.P.D., were walking past a school parking lot in the area of South 2nd Street around 1:00 a.m., when suddenly a man came out of the parking lot and approached them. That man was holding a gun, and put Z.P.D. in a headlock. He told Z.P.D. to empty his pockets. Z.P.D. was able to break free, however, and he and Steffen began running away. Z.P.D. then heard a gunshot, and saw that Steffen had fallen to the sidewalk. Z.P.D. realized that Steffen had been shot, and called 911.

¶3 Z.P.D. provided a description of the shooter to police. He said that the shooter was wearing a blue track suit with a hooded sweatshirt, had a medium build, skin tone similar to milk chocolate, and was clean-shaven.

---

[1] Carroll's trial and sentencing were before the Honorable Joseph R. Wall; we refer to him as the trial court. Carroll's postconviction motion was before the Honorable Glenn H. Yamahiro; we refer to him as the postconviction court. We further note that some of the pretrial proceedings in this matter were before the Honorable Jeffrey Conen.

¶4 Steffen was transported to the hospital, where he died of a single gunshot wound to his back. An RP Luger brand 9mm bullet casing was recovered from the scene.

¶5 In the course of the investigation, police obtained video surveillance footage from the school parking lot. The video showed a white car driving into the lot shortly before the shooting, and then speeding away moments after the shooting. Photos of the car were shown on the news, and police received a tip that led to the car. Its owner was identified as Mark Riley Roberson.

¶6 Police interviewed Roberson. He said that his cousin, Carroll, had been staying with him, and he allowed Carroll to use his car.[2] Roberson further stated that Carroll had used his car on the evening of May 30, 2017, and that he was wearing a blue track suit that night, which he wore "all the time." Roberson also said that Carroll was armed with a 9mm handgun. Roberson's girlfriend, who was at Roberson's apartment that night, also told police that Carroll had been wearing a blue track suit, and that she believed that he had a firearm in his waistband.

¶7 Roberson stated that Carroll had returned to his apartment that night well after midnight. He said that Carroll was "nervous and sweating" when he returned, and told Roberson that he "had to strip somebody," which Roberson understood to mean he had robbed someone. Roberson also stated that Carroll's gun had "fresh marks" on the slide, consistent with having been recently fired.

---

[2] Although Roberson referred to Carroll as his cousin, they apparently were not blood relatives.

¶8     Additionally, Roberson identified the white car in the surveillance video as his Chevrolet Impala.  Police searched the car and discovered RP-brand 9mm ammunition, as well as ammunition for other types of guns.

¶9     Carroll was arrested ten days after the shooting; he was wearing a blue track suit at the time of his arrest.  Z.P.D. identified him in a live lineup.

¶10    A jury trial was scheduled for January 2018.  However, Carroll requested an adjournment to investigate a potential jailhouse informant.  The trial was rescheduled for April 2018.

¶11    On the morning the trial was scheduled to begin, the State requested an adjournment because Roberson, who the State intended to call as a witness, could not be located.  Roberson was subsequently arrested on a material witness warrant, and agreed to appear at Carroll's trial.  The trial was rescheduled for September 2018.

¶12    At the September trial date, Roberson did not appear, and the State again requested an adjournment.  The trial was rescheduled for January 2019.

¶13    Additionally, shortly after that adjourned September trial date, Carroll submitted a *pro se* motion for a speedy trial, pursuant to WIS. STAT. § 971.10 (2017-18).[3]  A hearing was held on October 15, 2018, to address that motion, at which time Carroll's counsel made an oral request for a speedy trial on Carroll's behalf.  Since Carroll was represented, the parties agreed to calculate the speedy trial deadline date from October 15, rather than from the date that Carroll

_____

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

had filed his *pro se* motion. The rescheduled trial date for January 2019 fell within the ninety-day statutory guideline. *See* § 971.10(2)(a).

¶14    On the day of the trial set for January 2019, the State had to request another adjournment because Roberson again did not appear. Carroll's bond was converted to a personal recognizance bond and he was released, pursuant to the statutory requirements. *See* WIS. STAT. § 971.10(4).

¶15    The trial was rescheduled for May 2019; however, it was the third trial scheduled for that particular day. Carroll declined the possibility of being spun to another court. The trial was again rescheduled, to July 2019. However, on that trial date, Carroll informed his counsel that he wanted a notice of alibi filed and an alibi witness produced. Once again, the trial was rescheduled, to November 2019, at which time all parties were ready to proceed.

¶16    Z.P.D. testified regarding the robbery attempt and shooting. During cross-examination, counsel for Carroll focused particularly on the inconsistencies in Z.P.D.'s description of the shooter shortly after the incident as compared to Carroll's characteristics. For example, Z.P.D. had told police the shooter had a medium build, but counsel elicited testimony from Z.P.D. that Carroll had a large, muscular build. Z.P.D. had also reported that the shooter was clean-shaven; however, a picture taken of Carroll when he was arrested twelve days after the shooting showed he had a full beard. Counsel also pointed out that Carroll's skin tone was not the same color as a Hershey milk chocolate bar. Additionally, Z.P.D. had described the shooter as wearing a blue hooded sweatshirt, but the sweatshirt Carroll was wearing when he was arrested had no hood.

¶17    Roberson also testified. He stated that Carroll was wearing a blue track suit the day of the shooting. He also stated that he had let Carroll borrow his

white Impala on the night of the shooting, and that he saw Carroll with his 9mm gun "in his hand" when Carroll returned later that night. Roberson further testified that Carroll had told him he had "stripped," or robbed, somebody while he was gone.

¶18 Roberson's girlfriend, Porsha Frazier, also testified at trial. Although she stated that she did not remember anything from that night, the State, for purposes of impeachment, introduced evidence that Frazier had told police that Carroll was wearing a blue track suit when he left Roberson's apartment that night, that he had taken Roberson's white Impala, and that she could tell that he had a firearm in his waistband.

¶19 Additionally, the jury saw the surveillance video from the school showing the white vehicle entering the parking lot just prior to the shooting, and then leaving the parking lot at a higher rate of speed. The jury also heard evidence regarding the 9mm bullet casing found at the scene of the shooting, and the 9mm ammunition recovered from Roberson's vehicle.

¶20 The jury found Carroll guilty of all three charges: first-degree reckless homicide with the use of a dangerous weapon, attempted armed robbery, and possession of a firearm by a felon. The trial court imposed consecutive sentences totaling seventy years of imprisonment.

¶21 Carroll filed a postconviction motion seeking to vacate his convictions or, in the alternative, to modify his sentences. He argued that there was insufficient evidence to establish that he was the shooter; that his right to a speedy trial was violated; and that his sentences were unduly harsh and excessive.

¶22    The trial court rejected Carroll's arguments.  With regard to the insufficient evidence claim, it noted that the State's evidence was reviewed by the trial court both after the close of evidence and after the verdicts were rendered, and found to be sufficient to support the guilty verdicts.  Regarding the speedy trial claim, the trial court noted that Carroll also had requested adjournments along with the State, and further, that Carroll was in custody for part of that time for an unrelated conviction, and therefore was not prejudiced.

¶23    Finally, with regard to Carroll's sentence, the trial court found that it was based on proper factors, and the basis for imposing consecutive sentences was thoroughly explained.  Therefore, the court denied Carroll's postconviction motion.  This appeal follows.

**DISCUSSION**

*Sufficiency of the Evidence*

¶24    We first review Carroll's claim that there was insufficient evidence to establish him as the perpetrator of these crimes.  When reviewing the sufficiency of the evidence, this court "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."  ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶25    Furthermore, our review of the trier of fact's findings is "highly deferential." ***State v. Rowan***, 2012 WI 60, ¶5, 341 Wis. 2d 281, 814 N.W.2d 854. In fact, "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite

guilt," this court "may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." *Poellinger*, 153 Wis. 2d at 507. Whether the evidence in a case is sufficient to sustain a guilty verdict is a question of law that we review *de novo*. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶26 Carroll's arguments relating to this issue, as well as being argued at trial, are that Carroll was misidentified as the perpetrator.[4] As such, he focuses on the inconsistencies between Z.B.D.'s description of the suspect provided shortly after the shooting, and Carroll's actual physical characteristics. Carroll further notes that his track suit jacket did not have a hood, as described by Z.B.D. These identification issues were all raised and discussed by Carroll's counsel during cross-examination, such that the jury heard about these inconsistencies during this testimony. They were further reiterated by counsel during closing arguments.

¶27 Additionally, the jury was provided an instruction relating to the identification of Carroll as the perpetrator, which states, in part:

> The identification of the defendant is an issue in this case and you should give it your careful attention. You should consider the reliability of any identification made by a witness, whether made in or out of court. You should consider the credibility of a witness making an identification of the defendant in the same way you consider credibility of any other witness.

---

[4] In support of this argument, Carroll cites *State v. McMorris*, 213 Wis. 2d 156, 160, 570 N.W.2d 384 (1997), in which our supreme court reviewed the admissibility of an eyewitness's in-court identification of the defendant after an identification in a lineup that violated the defendant's Sixth Amendment right to counsel. *Id.* We disagree with Carroll that the discussion in *McMorris* is applicable here, as it revolved around whether the in-court identification had a sufficient "independent origin" from the lineup that was determined to have violated the defendant's rights. *Id.* at 178. Here, the lineup in which Z.B.D. identified Carroll was not challenged.

WIS JI—CRIMINAL 141.

¶28 "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Poellinger*, 153 Wis. 2d at 506. Indeed, the "rule in Wisconsin" is that the jury is the "ultimate arbiter of credibility," *see O'Connell v. Schrader*, 145 Wis. 2d 554, 557, 427 N.W.2d 152 (Ct. App. 1988), and "[w]here there are inconsistencies within a witness's testimony or between witnesses' testimonies, the jury determines the credibility of each witness and the weight of the evidence," *see State v. Sharp*, 180 Wis. 2d 640, 659, 511 N.W.2d 316 (Ct. App. 1993).

¶29 We conclude that the evidence presented by the State—including Z.B.D.'s testimony of the incident and identification of Carroll in the live lineup; the video surveillance of the white vehicle at the scene; the 9mm bullet casing recovered from the scene; and the testimony of Roberson and Frazier linking Carroll to the blue track suit, the white Impala, and a 9mm gun—was sufficient for the jury, after weighing that evidence and assessing credibility, to convict Carroll. *See Poellinger*, 153 Wis. 2d at 506. We therefore will not disturb the jury's verdict. *See id.* at 507.

*Speedy Trial Rights*

¶30 Next, we review Carroll's claim that his speedy trial rights were violated. There is both a constitutional and a statutory right to a speedy trial. With regard to the statutory right to a speedy trial, WIS. STAT. § 971.10(2)(a) provides that "[t]he trial of a defendant charged with a felony shall commence within 90 days from the date trial is demanded[.]" If the trial does not occur in accordance with this required time frame, the remedy is that the defendant is

9

"discharged from custody[.]" *See* § 971.10(4). That occurred in this case; when the State had to request an adjournment in January 2019 after Carroll's speedy trial request made in October 2018, his bail was converted to a personal recognizance bond and he was released. *See id.* Therefore, the trial court complied with the statutory requirements for a speedy trial.[5] *See State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999) ("Statutory interpretation and applying a statute to a set of facts are both questions of law which this court reviews *de novo*.").

¶31    With regard to the constitutional right to a speedy trial, "[b]oth the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial." *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. Whether a defendant has been denied his constitutional right to a speedy trial is a question of law that we review *de novo*. *See id.*, ¶10. However, the findings of fact made by the trial court will be upheld unless they are clearly erroneous. *Id.*

¶32    To make the determination of whether the right to a speedy trial has been violated, courts use a "four-part balancing test" established in *Barker v. Wingo*, 407 U.S. 514 (1972). *See Urdahl*, 286 Wis. 2d 476, ¶11. This test "weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily." *Id.* However, the right to a speedy trial "is not subject to bright-line

---

[5] Carroll argues that the trial court failed to comply with the statutory requirements for a speedy trial request after the State requested an adjournment in April 2018. However, as noted above, Carroll did not make his speedy trial request until October 2018, and in a felony case, the statutory time frame does not commence until that demand is made. *See* WIS. STAT. § 971.10(2)(a).

determinations and must be considered based on the totality of circumstances that exist in the specific case." *Id.*

¶33    The first *Barker* factor is "the length of delay," which is also the "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Urdahl*, 286 Wis. 2d 476, ¶12. "Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial." *Id.* Here, the post-accusation delay was over two years. We therefore review the other three *Barker* factors, which are:   the reasons for the delay; whether the defendant asserted the right to a speedy trial; and whether the delay prejudiced the defendant. *See State v. Provost*, 2020 WI App 21, ¶¶26-27, 392 Wis. 2d 262, 944 N.W.2d 23.

¶34    The second and third *Barker* factors—the reasons for the delay and the assertion of the right—we review in tandem, as they are interrelated for purposes of this discussion. To begin with, Carroll did not assert his speedy trial rights until October 2018, when more than a year had already passed since he had been charged. Although a defendant does not waive the right to a speedy trial by failing to assert it, "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Barker*, 407 U.S. at 528.

¶35    In this case, there were numerous adjournments that required the trial to be rescheduled, both before and after Carroll asserted his speedy trial rights, with several of the adjournments requested by Carroll. Furthermore, when Carroll did assert his right and the State had to adjourn the following trial date, he was released on a personal recognizance bond, in accordance with the speedy trial statute. *See* WIS. STAT. § 971.10(4). We therefore conclude that neither of these factors weigh in favor of finding a violation of Carroll's speedy trial rights.

¶36 Turning to the fourth factor, determining whether Carroll was prejudiced by these delays, we consider the "three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *See Urdahl*, 286 Wis. 2d 476, ¶34. In his argument on this issue, Carroll does not assert any specific allegations relating to these considerations, other than stating that the delay between charging and trial was excessive. While "affirmative proof of particularized prejudice is not essential to every speedy trial claim," in reviewing this issue, "presumptive prejudice" based on a delay of over one year "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria," including the prejudice factor. *Doggett v. United States*, 505 U.S. 647, 655-56 (1992). Carroll fails to provide any explanation of how the delay in this case impacted him relative the three interests relating to prejudice set forth in *Urdahl*.

¶37 Furthermore, the trial court made a factual finding that Carroll was incarcerated on an unrelated case prior to his trial in this matter, due to a revocation hold and then serving the sentence after his extended supervision in that unrelated matter was ultimately revoked. This finding, supported by the record, weighs against the interest regarding "oppressive pretrial incarceration," since Carroll's incarceration was for an unrelated case. *See Urdahl*, 286 Wis. 2d 476, ¶34.

¶38 In sum, after weighing the *Barker* factors as they relate to the totality of the circumstances in this case, we conclude that Carroll's constitutional rights to a speedy trial, were not violated. *See id.*, ¶11. Therefore, because neither Carroll's statutory nor constitutional rights to a speedy trial were violated, his claim fails.

*Sentence Modification*

¶39    Finally, we turn to Carroll's claim that he is entitled to sentence modification because his sentence was unduly harsh or unconscionable. The trial court has "the 'inherent power' to modify a previously imposed sentence after the sentence has commenced" if it "concludes its original sentence was 'unduly harsh or unconscionable[.]'" *State v. Grindemann*, 2002 WI App 106, ¶21, 255 Wis. 2d 632, 648 N.W.2d 507 (citations omitted). We review the determination regarding whether a sentence was unduly harsh or unconscionable for an erroneous exercise of discretion. *Id.*, ¶30.

¶40    A sentence will be considered unduly harsh or unconscionable "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). On the other hand, "[a] sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449.

¶41    As previously noted, Carroll's total sentence for the three counts was seventy years, divided as follows: for the count of first-degree reckless homicide with the use of a dangerous weapon, thirty years of initial confinement followed by fifteen years of extended supervision; for the attempted armed robbery count, ten years of initial confinement followed by five years of extended supervision; and for the possession of a firearm by a felon count, five years of initial confinement followed by five years of extended supervision. Also, as stated above, the sentences were imposed to run consecutively.

13

¶42    In its review of Carroll's postconviction motion, the postconviction court rejected his claim that his sentence was unduly harsh or unconscionable. The court found that the trial court had considered the proper sentencing factors, which were accompanied by a "detailed explanation" of the trial court's basis for the sentence imposed, including its review of the maximum sentences allowed for each count, and its reason for imposing consecutive sentences.

¶43    The sentences imposed in this matter were all within the statutory limits.  *See* WIS. STAT. §§ 940.02(1);  939.63(1)(b);  939.50(3)(b)-(c),  (g);  943.32(2);  939.32(1g);  941.29(1m)(a).    Furthermore, we agree with the postconviction court's finding that the proper legal standards for sentencing were applied, based on our review of the sentencing transcript which contained a very thorough discussion of the sentencing objectives and factors considered by the trial court. *See **State v. Gallion***, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197.    Therefore, the postconviction court's rejection of Carroll's sentence modification claim was not an erroneous exercise of discretion.  *See **Grindemann***, 255 Wis. 2d 632, ¶30.

¶44    Accordingly, as we have rejected all of Carroll's claims, we affirm his judgment of conviction and the order denying his postconviction motion.

*By the Court.*—Judgment and order affirmed.

This  opinion  will  not  be  published.    *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).